STATE of Wisconsin, Plaintiff-Respondent,

v.

Shelleen B. JOYNER, Defendant-Appellant.†

Court of Appeals

*No. 01–3049–CR. Submitted on briefs August 6, 2002.—Decided September 24, 2002.*

2002 WI App 250

(Also reported in 653 N.W.2d 290.)

† Petition to review denied 12-10-02.

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Margaret A. Maroney*, assistant state public defender, of Madison.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *James E. Doyle*, attorney general, and *Marguerite M. Moeller*, assistant attorney general.

Before Wedemeyer, P.J., Fine and Schudson, JJ.

¶ 1. FINE, J. Shelleen B. Joyner appeals from a judgment of conviction entered on a jury verdict finding

her guilty of robbery with the use of force, as a party to a crime. *See* WIS. STAT. §§ 943.32(1)(a) & 939.05. Joyner also appeals from an order denying her postconviction motion for a new trial. She claims that: (1) she was denied the effective assistance of counsel when her trial attorney failed to object to what she claims was prejudicial hearsay; (2) the trial court erred when it determined that an alleged confession by her sister was not admissible as a statement against the sister's penal interest; and (3) she is entitled to a new trial in the interest of justice because the real controversy, the identity of the robber, was not fully and fairly tried. We affirm.

## I.

¶ 2. Shelleen B. Joyner was tried for stealing a purse from ninety-two-year-old Constance Anderson in September of 2000. Jeffery Schmitt, a witness to the crime, testified that he was riding his bicycle on the east side of Milwaukee when he heard a "scream or a sigh for help." He saw Anderson lying on the sidewalk and a woman, whom he later identified as Shelleen Joyner, running away from Anderson with a purse in her hand. Schmitt testified that he was able to get a good look at Joyner as she ran past him. Schmitt further testified that Joyner got into the front, passenger side door of a blue, four-door sedan with a license plate number VER-456.

¶ 3. Schmitt chased the car on his bicycle, but returned to Anderson. Schmitt testified that Anderson told him that someone had taken her purse. Schmitt called the police on his cellular phone and waited with Anderson. According to Schmitt, Anderson "had a big lump on the back of her head, and she was bleeding down her back."

¶ 4. Joyner was charged after Schmitt picked her out of a six-woman photographic array and a five-woman lineup.[1] Prior to trial, her first attorney, F.M. Van Hecke, moved to withdraw as her counsel. Van Hecke claimed that he could no longer represent her because he had become a potential witness based upon a "confession" that Joyner's sister, Trudy Joyner, made to him.

¶ 5. When Trudy Joyner did not appear at trial, Shelleen Joyner's then-current attorney sought to admit Trudy Joyner's "confession" through Van Hecke's testimony. According to a written statement that Trudy Joyner signed, she claimed that "Denise Werchowski did the robbery [and] I was in the car; Shelleen wasn't there." Trudy Joyner's full narrative as material to the robbery was recorded by Van Hecke as follows:

> Denise Werchowski did the robbery & I was in the car; Shelleen wasn't there. I didn't know Denise was going to do this. [I'm afraid of Frank. Denise was hit by Scrap [*sic*]. Frank & Scrap are in things together.] Sept. 14 Scrap grabbed keys from Shelleen. "Let's go to get some money" : Denise. She went all over to get money that day. She wanted to score crack. We went to her house & she stole some T shirts from her boyfriend & sold 'em. Denise's words I took that she was gonna borrow money from somebody. Denise said "Wait a minute, park here, pullup & wait." She got out & then I heard a yell & then she ran up "come on, come on." There was plastic on the back window of the car & I couldn't see behind. She got in on the passenger side door (front). "Take off, come on, come on." I thought "Oh Man, I'm gone, I'm done, I'm through." I heard a white man mumbling & [*illegible*] Denise had a purse in her hand. When I saw the

---

[1] During this time, the police also learned that the getaway car was registered to Shelleen Binns, Shelleen Joyner's name from a prior marriage.

purse I thought we were in big trouble & I wanted to get out of there. I wanted to tell the police, but how could I? Maybe I'm better in jail than dying.

(Non-italicized bracketed material in original.) "Frank" was described in an earlier part of the statement as the father of Trudy Joyner's child, and someone of whom she is afraid. "Scrap" is not further identified. From this statement it appears that "Scrap" was driving; there is nothing in the statement that indicates that Trudy Joyner was driving. For some reason, the Dissent ignores this.

¶ 6. Shelleen Joyner's attorney argued that Trudy Joyner's statement to Van Hecke was admissible as a statement against Trudy Joyner's penal interest because it implicated Trudy Joyner in the robbery. The trial court determined that Trudy Joyner was unavailable because she failed to appear when subpoenaed but that the statement was inadmissible because it was not against Trudy Joyner's penal interest.

## II.

¶ 7. First, Shelleen Joyner alleges that her trial counsel was ineffective when he failed to object to what she calls "prejudicial hearsay." The familiar two-pronged test for ineffective-assistance-of-counsel claims requires a defendant to prove: (1) deficient performance; and (2) prejudice. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). To prove deficient performance, a defendant must show specific acts or omissions of counsel that are "outside the wide range of professionally competent assistance." *Id.*, 466 U.S. at 690. There is a "strong presumption that counsel acted reasonably within professional norms." *State v. Johnson*, 153 Wis. 2d 121, 127, 449 N.W.2d 845, 848 (1990).

██

¶ 8. To prove prejudice, a defendant must show that counsel's errors were so serious that the defendant was deprived of a fair trial and a reliable outcome. *Strickland*, 466 U.S. at 687. To succeed, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.*, 466 U.S. at 694.

¶ 9. Our standard for reviewing this claim involves a mixed question of law and fact. *Johnson*, 153 Wis. 2d at 127, 449 N.W.2d at 848. The trial court's findings of fact will not be disturbed unless they are clearly erroneous. *Ibid.* The legal conclusions, however, whether the lawyer's performance was deficient and prejudicial are questions of law that we review *de novo*. *Id.*, 153 Wis. 2d at 128, 449 N.W.2d at 848. Finally, we need not address both *Strickland* prongs if the defendant fails to make a sufficient showing on either one. *Strickland*, 466 U.S. at 697.

¶ 10. At trial, Officer Tracy Becker testified about an investigatory conversation with Shelleen Joyner, Trudy Joyner, Wendy Dabney, and Denise Werchowski a day or so after the robbery. Officer Becker testified, in response to questions by Joyner's lawyer, that Shelleen Joyner denied robbing Anderson. According to the officer, Shelleen Joyner said that she was not involved but that her sister Trudy Joyner and Werchowski may

have done it.[2] The officer also told the jury, this time in response to questions asked by the prosecutor:

> In talking to all of them, Shelleen Joyner stated that she had gone to that area on the east side to visit friends but had never done any offense. Trudy Joyner [*sic*] – she had stated she went with Denise Werchowski and with her sister, Trudy Joyner. Trudy Joyner denied ever getting in the car and going to that area. Denise Werchowski stated she had gone to the area with both Trudy and Shelleen, so there stories were all conflicting.

And then later in Officer Becker's testimony:

> The information from Wendy Dabney provided that she had left that house, Shelleen Joyner's house, just about 12:00 in the afternoon. This offense occurred at 12:45. At that time Shelleen Joyner was the passenger in the front seat of her vehicle. Her sister, Trudy, was in the driver's seat, denise [*sic*] Werchowski as [*sic*] in the back seat, and they were about to go somewhere. That added to my suspicion that all three of these people may have been involved in in [*sic*] that offense. That added on to Trudy saying she was never in the car at all, had never gone anywhere. The other two saying that they were there with Trudy. All their stories were conflicting, so based on all that information, they were then placed under arrest.

Shelleen Joyner alleges that this was prejudicial because it contradicted her testimony and the testimony of her witnesses that she was at home when the robbery occurred. She thus claims that this testimony "gave significant corroborating evidence to the state's case"

---

[2] This testimony was, of course, inadmissible hearsay—an out-of-court statement by a party elicited by that party's attorney.

and that without it "there was a reasonable probability of an acquittal." We disagree.

¶ 11. According to Officer Becker, Shelleen Joyner denied being involved in the robbery. Shelleen Joyner also claimed that she had gone to the east side with Trudy Joyner and Werchowski. Trudy Joyner denied to Officer Becker that she was ever in Shelleen Joyner's car, and Dabney claimed that she saw Shelleen Joyner, Trudy Joyner, and Werchowski leave in Shelleen Joyner's car. Further, Werchowski claimed that she had gone to the east side with Shelleen and Trudy Joyner. Although the conflicting comments by Dabney, Werchowski, and Trudy Joyner may have contradicted Shelleen Joyner's claim that she was not in the car that day, admission of the evidence does not rise to the level of prejudice that an ineffective-assistance-of-counsel claim must reach; Shelleen Joyner has not demonstrated a "reasonable probability" that but for her trial counsel's failure to object, the result of her trial would have been different, especially in light of the fact that *her* out-of-court statement to Officer Becker admitting that she was with the others that day was admissible non-hearsay, under WIS. STAT. RULE 908.01(4)(b)1. *See Strickland*, 466 U.S. at 694. Inexplicably, the Dissent ignores that Shelleen Joyner's "alibi" was, to use the Dissent's word, "torpedoed" by *her own* statements to Officer Becker. Her admission to Officer Becker that she had "gone to that area on the east side to visit friends" effectively sunk her alibi *by itself*—and would have even if the statements of the others had been excluded.

¶ 12. Second, Shelleen Joyner claims that the trial court erred when it determined that Trudy Joyner's alleged confession was inadmissible. Shelleen

Joyner's allegation presents overlapping claims. In her brief, she frames this issue as an interest-of-justice claim, alleging that she is entitled to a new trial because the real controversy, the identity of the purse-snatcher, was not fully and fairly tried.

¶ 13. Shelleen Joyner also appears to make an evidentiary claim, however, contending that the trial court erred when it determined that Trudy Joyner's confession was inadmissible because her "confession" was not against Trudy Joyner's penal interest. We will address Shelleen Joyner's evidentiary claim first because a resolution of this claim will resolve the interest-of-justice claim. *See Saenz v. Murphy*, 162 Wis. 2d 54, 57 n.2, 469 N.W.2d 611, 612 n.2 (1991) ("this court is not bound by the issues as they are framed by the parties"), *overruled on other grounds by State ex rel. Anderson-El v. Cooke*, 2000 WI 40, 234 Wis. 2d 626, 610 N.W.2d 821.

¶ 14. Shelleen Joyner claims that "[t]he circuit court was wrong in concluding that nothing in the statement was against Trudy's penal interest [because] Trudy admitted that she knowingly helped a robber escape." We disagree.

¶ 15. Hearsay statements that are against an unavailable declarant's interest are admissible as an exception to the hearsay rule. Wisconsin Stat. Rule 908.045(4) defines a statement against interest as:

> A statement which was at the time of its making so far contrary to the declarant's pecuniary or proprietary interest, or so far tended to subject the declarant to civil or criminal liability or to render invalid a claim by the declarant against another or to make the declarant an object of hatred, ridicule, or disgrace, that a reasonable person in the declarant's position would not have made the statement unless the person believed it to be true.

260

The exception for statements against interest is based on the assumption that people do not make statements that are damaging to themselves unless they have a good reason to believe that those statements are true. *State v. Stevens*, 171 Wis. 2d 106, 113, 490 N.W.2d 753, 757 (Ct. App. 1992).

¶ 16. Generally, a trial court's decision to admit a hearsay statement is discretionary and we will not reverse unless the trial court erroneously exercised its discretion. *State v. Moats*, 156 Wis. 2d 74, 96, 457 N.W.2d 299, 309 (1990). Whether a statement is admissible under a hearsay exception, however, is a question of law that we review *de novo*. *Stevens*, 171 Wis. 2d at 112, 490 N.W.2d at 756.

¶ 17. In this case, Trudy Joyner made a statement to Shelleen Joyner's attorney, Van Hecke. Van Hecke transcribed what she told him and she signed it. At trial, Shelleen Joyner's attorney argued that this statement should be admitted through Van Hecke's testimony because it was a statement against Trudy Joyner's penal interest. The trial court disagreed:

> Saying somebody else committed the crime I don't feel is against her penal interest. To the extent that you want to have a statement from Trudy staying [*sic*] she admits she committed the crime, that is against her penal interest. The remainder of any statement that somebody says somebody else was with her and somebody else committed the crime, that is not against her penal interest, so I won't allow that part of the statement.

We agree.

¶ 18. Shelleen Joyner argues that Trudy Joyner's statement is against her penal interest, however, because Trudy Joyner admitted that she "knowingly helped a robber escape." We disagree. "[W]hen ruling upon a narrative's admissibility . . . a court must break it down and determine the separate admissibility of each 'single declaration or remark.'" *United States v. Canan*, 48 F.3d 954, 959 (6th Cir. 1995) (quoting *Williamson v. United States*, 512 U.S. 594, 599 (1994)). "[E]ach particular assertion in a narrative should be interpreted within the context of the circumstances under which it was made to determine if that assertion is in fact sufficiently against interest." *Silverstein v. Chase*, 260 F.3d 142, 148 (2d Cir. 2001) (citing *Williamson*, 512 U.S. at 603–604).

¶ 19. Trudy Joyner's "confession" must be broken down into its parts: (1) Trudy Joyner's statement that "Shelleen wasn't there"; and (2) Trudy Joyner's statement that "Denise Werchowski did the robbery [and] I was in the car." Trudy Joyner's first statement, that "Shelleen wasn't there," is not a statement against Trudy Joyner's penal interest. This statement does not inculpate Trudy Joyner. Indeed, simply saying that Shelleen Joyner did not commit a crime does not expose Trudy Joyner to potential criminal liability any more than a statement that Shelleen Joyner did not commit an unrelated bank robbery would.

¶ 20. Trudy Joyner's second statement, that "Denise Werchowski did the robbery [and] I was in the car," is more complex. At trial, Shelleen Joyner's attorney provided the trial court with a copy of Trudy Joyner's "confession," which included this statement. This state-

ment, by itself, however, does not inculpate Trudy Joyner. She merely states that someone else, Werchowski, committed a crime, and, as we have seen, it impliedly relates that "Scrap" was driving. Like the first part, it does not expose Trudy Joyner to criminal liability. *See Williamson*, 512 U.S. at 601 (courts should refrain from assuming that a statement is self-inculpatory because it is part of a fuller confession, especially when the statement implicates someone else).

¶ 21. Shelleen Joyner's attorney attached an affidavit from Van Hecke to the postconviction motion. In the affidavit, Van Hecke claims: "Trudy stated that on September 16, 2000, *she drove Shelleen's car*. Denise Werchowski was a passenger. Denise left the car and returned, running, with a purse." (Emphasis added.) This statement apparently changes the facts—Trudy Joyner admits that she was involved in the purse-snatching by knowingly driving the getaway car after the fact. While this may tend to inculpate Trudy Joyner, her assertion that Shelleen Joyner was innocent did *not* tend to inculpate Trudy Joyner under the settled law discussed earlier. A claim that Trudy Joyner was driving the getaway car was distinct from her attempt to exculpate her sister. Moreover, Shelleen Joyner's attorney did not explicitly make this offer of proof to the trial court during the trial.[3] Thus, Shelleen Joyner's attorney was, in effect, asking the postconviction court to consider new evidence.

---

[3] Shelleen Joyner's trial ran from January 31, 2001, to February 2, 2001, while Van Hecke's affidavit is dated September 24, 2001.

¶ 22. When a defendant seeks to present new evidence, the following minimum criteria must be met: (1) the evidence must have come to the moving party's knowledge after trial; (2) the moving party must not have been negligent in seeking to discover the evidence; (3) the evidence must be material to the issue; (4) the testimony must not be merely cumulative to that which was introduced at trial; and (5) it must be reasonably probable that a different result would be reached on a new trial. *State v. Boyce*, 75 Wis. 2d 452, 457, 249 N.W.2d 758, 760 (1977). If the new evidence fails to meet any one of these criteria, the moving party is not entitled to a new trial. *Id.*, 75 Wis. 2d at 457, 249 N.W.2d at 761.

¶ 23. Here, Shelleen Joyner's attempt to bolster the offer of proof through the attorney's affidavit with the postconviction motion fails on the first prong—she does not present any evidence that she first discovered after the trial that Trudy Joyner was allegedly driving the getaway car. Indeed, Shelleen Joyner fails to address any of the factors for new evidence or even acknowledge that Van Hecke's statement presented new evidence. It also fails because, as noted, Trudy Joyner's attempt to exculpate her sister was not against Trudy Joyner's penal interest—indeed, it was consistent with her societal and family interest.

¶ 24. Finally, Shelleen Joyner alleges that she is entitled to a new trial in the interest of justice. She claims that the real controversy was not fully and fairly tried because the identification of the robber is a "major issue in th[e] case" and that a "significant component of [her] defense was Trudy Joyner's evidence that Denise Werchowski stole a purse and escaped in the car driven

by Trudy." Shelleen Joyner also claims that she is entitled to a new trial because the State introduced evidence that she purchased and used cocaine on the day of the purse-snatching. She contends that this evidence was "improper and prejudicial" because the State used it to imply that her drug use affected her "ethics." Again, we disagree.

¶ 25. Under WIS. STAT. § 752.35, we may grant a discretionary reversal if the real controversy has not been fully tried or if it is likely for any reason that justice has miscarried. *State v. Wyss*, 124 Wis. 2d 681, 735, 370 N.W.2d 745, 770 (1985), *overruled on other grounds by State v. Poellinger*, 153 Wis. 2d 493, 451 N.W.2d 752 (1990). In this case, the real controversy was fully tried—we have already concluded that Trudy Joyner's statements were correctly excluded. Therefore, further discussion would simply be a rehash of this argument. *See Mentek v. State*, 71 Wis. 2d 799, 809, 238 N.W.2d 752, 758 (1976).

¶ 26. Moreover, Shelleen Joyner's argument that the trial court improperly introduced evidence of her cocaine use is amorphous and undeveloped. Thus, we decline to address it. *See Barakat v. Wisconsin Dep't of Health & Soc. Servs.*, 191 Wis. 2d 769, 786, 530 N.W.2d 392, 398399 (Ct. App. 1995) (a court of appeals may decline to review an issue that is "amorphous and insufficiently developed").

*By the Court.*—Judgment and order affirmed.

¶ 27. SCHUDSON, J. (*dissenting*). The majority's opinion is flawed in two important respects. First, its interpretation of Officer Becker's hearsay testimony is illogical. Second, its analysis of Trudy Joyner's confession is misleading.

## I. Officer Becker's Testimony

¶ 28. It is undisputed that Officer Becker's testimony provided statements of Shelleen Joyner, and hearsay statements of Trudy Joyner, Wendy Dabney, and Denise Werchowski. It is undisputed that, in their statements, Shelleen, Wendy, and Denise all placed Shelleen in the car and in the area of the crime. It is undisputed that these statements contradicted Shelleen's alibi. And, as the majority acknowledges, "[t]his testimony [from Officer Becker relating the statements of Trudy, Wendy, and Denise] was, of course, inadmissible hearsay." Majority at ¶ 9 n.2. Nevertheless, the majority concludes that Shelleen Joyner was not prejudiced by the admission of this inadmissible hearsay. I disagree.

¶ 29. When a defendant offers an alibi, the defendant's prior inconsistent statement will often torpedo it. When, in addition, that prior inconsistent statement is further propelled by the corroborating statements of the defendant's friends or relatives (who ordinarily would be expected to support the alibi), the alibi will almost always be destroyed. That is exactly what we have here. The inadmissible hearsay destroyed Shelleen Joyner's alibi, thus establishing the "reasonable probability" that, but for her counsel's failure to object, the result of her trial would have been different. *See Strickland v. Washington*, 466 U.S. 668, 694 (1984).

## II. Trudy Joyner's Confession

¶ 30. Even more troubling, however, is the majority's analysis of Trudy Joyner's confession. The majority writes:

> Trudy Joyner's second statement, that "Denise Werchowski did the robbery [and] I was in the car," is more complex. At trial, Shelleen Joyner's attorney provided

the trial court with a copy of Trudy Joyner's "confession," which included this statement. This statement, *by itself,* however, does not inculpate Trudy Joyner. She merely states that someone else, Werchowski, committed a crime, and, as we have seen, it impliedly relates that "Scrap" was driving. Like the first part, it does not expose Trudy Joyner to criminal liability.

Shelleen Joyner's attorney attached an affidavit from Van Hecke to the postconviction motion. In the affidavit, Van Hecke claims: "Trudy stated that on September 16, 2000, *she drove Shelleen's car.* Denise Werchowski was a passenger. Denise left the car and returned, running, with a purse." (Emphasis added.) *This statement apparently changes the facts—Trudy Joyner admits that she was involved in the purse-snatching by knowingly driving the getaway car after the fact. While this may tend to inculpate Trudy Joyner, Shelleen Joyner's attorney did not explicitly make this offer of proof to the trial court during the trial. Thus, Shelleen Joyner's attorney was, in effect, asking the postconviction court to consider new evidence.*

*Id.* at ¶¶ 19–20 (first and last emphases added; second emphasis—"*she drove Shelleen's car*"—added in majority opinion; footnote and citation omitted).

¶ 31. If Trudy's confession were as the majority represents in these paragraphs—that Trudy "merely states that someone else, Werchowski, committed a crime"—not only would I agree with the majority's legal conclusion, but I would admonish Joyner's appellate counsel for misrepresenting the record in her brief to this court. Counsel's brief, however, is accurate; the majority's treatment of the record is misleading.

¶ 32. The September 24, 2001 Van Hecke affidavit, submitted in postconviction proceedings, provided no new information on the subject of Trudy Joyner's confession. In fact, the Van Hecke affidavit attached the

267

confession, *which had been presented to the trial court as Exhibit 5, at the trial, on February 2, 2001.* The confession contained far more than the statement, "Denise Werchowski did the robbery [and] I was in the car." Trudy's confession included:

> Denise said, "Wait a minute, park here, pull up & wait." She got out & then I heard a yell & then she ran up, "[C]ome on, come on." There was plastic on the back window of the car & I couldn't see behind. She got on the passenger side door (front). "Take off, come on, come on." I thought, "Ok Man, I'm gone, I'm done, I'm th[r]ough." I heard a white man mumbling & . . . Denise had a purse in her hand. When I saw the purse I thought we were in big trouble & I wanted to get out of there.

(Crossed-out words deleted; punctuation added.) While quoting these words, the majority ignores their apparent implication: Trudy, by her own account, was the getaway driver.

¶ 33. The majority's legal analysis works only if, as the majority claims, the quotation, "Denise Werchowski did the robbery [and] I was in the car," appears "by itself" as the only statement possibly implicating Trudy. *See* Majority at ¶ 19. The majority's analysis works only if, as the majority claims, Van Hecke's affidavit, coming many months after the trial, was the first statement saying that Trudy *"drove Shelleen's car." Id.* at ¶ 20. The majority's analysis works only if, as the majority claims, Van Hecke's affidavit "changes the facts—Trudy Joyner admits that she was involved in the purse-snatching by knowingly driving the getaway car after the fact." *Id.*

¶ 34. But Van Hecke's affidavit changed nothing. Trudy's written statement, offered at trial (but not received in evidence), contained the words the majority

all but ignores. And, while one could stretch to interpret them differently, Trudy's words, upon any fair reading, admitted that she was the getaway driver. Thus, the majority's analysis, entirely dependent on its truncated treatment of Trudy's confession, fails.

## III. Conclusion

¶ 35. The evidence in this trial included inadmissible hearsay—the statements of Trudy, Wendy, and Denise introduced through Officer Becker's testimony—to which defense counsel did not object, that destroyed Joyner's alibi defense. The evidence in this trial, however, did not include admissible hearsay —Trudy Joyner's confession—which defense counsel attempted to introduce, exculpating Shelleen Joyner and implicating Trudy and Denise.

¶ 36. The supreme court has identified two "factually distinct ways" in which "the controversy may not have been fully tried" such that a new trial is required:

> (1) when the jury was erroneously not given the opportunity to hear important testimony that bore on an important issue of the case; and (2) when the jury had before it evidence not properly admitted which so clouded a crucial issue that it may be fairly said that the real controversy was not fully tried.

*State v. Hicks*, 202 Wis. 2d 150, 160, 549 N.W.2d 435 (1996). In this trial, both "distinct ways" occurred. Trudy Joyner's confession "bore" directly on identification of the robber, and Officer Becker's hearsay testimony "clouded" the issue of whether Shelleen's alibi was credible. Thus, Joyner deserves a new trial in the interest of justice. Accordingly, I respectfully dissent.