In re the Commitment of Richard A. Brown:
State of Wisconsin, Petitioner-Respondent,

v.

Richard A. Brown, Respondent-Appellant.†

Court of Appeals

*No. 03–1419. Submitted on briefs December 2, 2003.—
Decided January 27, 2004.*

2004 WI App 33

(Also reported in 676 N.W.2d 555.)

† Petition to review granted 5-12-04.

On behalf of the respondent-appellant, the cause was submitted on the briefs of *Steven P. Weiss*, assistant state public defender.

On behalf of the petitioner-respondent, the cause was submitted on the brief of *Peggy A. Lautenschlager*, attorney general, and *Sally L. Wellman*, assistant attorney general.

Before Wedemeyer, P.J., Schudson and Curley, JJ.

¶ 1. SCHUDSON, J. Richard A. Brown appeals from the circuit court order denying his petition for supervised release under WIS. STAT. ch. 980. He argues that the court erred in admitting a report of a psychologist who did not testify and, further, that without the report, the State failed to prove by clear and convincing evidence that he should not be granted supervised release. We affirm.

## I. BACKGROUND

¶ 2. In 1988, Brown, then sixteen years old, was adjudicated delinquent for sexually assaulting two girls who lived in his neighborhood. The juvenile court ordered his placement at the Homme Home residential treatment center in Wittenburg, Wisconsin, where he remained until March 1990. During his treatment it was discovered that prior to his adjudication for the sexual assaults on his neighbors, Brown had been sexually assaulting his three sisters. In 1993, he was convicted of second-degree sexual assault of a child and incest with a child and sentenced to forty months in prison. In 1995, Brown was convicted of a 1990 sexual assault of a runaway girl, and was placed on probation for five years. In 1995, when Brown reached his mandatory release date, he was placed at the Wisconsin Resource Center's Chapter 980 unit and, on November 5, 1998, he was formally committed under ch. 980.

¶ 3. In April 2002, Brown filed a petition for supervised release. The circuit court appointed a psychologist, Dr. Michael Kotkin, to examine him and file a report as required by WIS. STAT. § 980.08(3) (2001–02).[1] Pursuant to the court's order, Dr. Kotkin examined Brown on May 15, 2002, and prepared a report on

---

[1] All references to the Wisconsin Statutes are to the 2001–02 version unless otherwise noted. WISCONSIN STAT. § 980.08(3) provides, in part:

> Within 20 days after receipt of the petition [for supervised release], the court shall appoint one or more examiners having the specialized knowledge determined by the court to be appropriate, who shall examine the person and furnish a written report of the examination to the court within 30 days after appointment. The examiners shall have reasonable access to the person for purposes of examination and to the person's past and present treatment records, ... and patient health care records .... If any such examiner believes that the person is appropriate for supervised

753

August 26, 2002. The report summarized the May 15 examination and also noted "significant progress" in Brown's treatment since that time. It concluded that if Brown "stays on the track he seems to have developed, his request for supervised release would be considered to be quite appropriate and supported by this evaluator in the future." Dr. Kotkin provided his August 26 report to Brown's attorney (who, appellate counsel implicitly acknowledges, withdrew the petition when the report did not recommend supervised release at that time). Dr. Kotkin, however, failed to file his report with the court as required by § 980.08(3).

¶ 4. Approximately one month later, Dr. David Warner, a psychologist employed at the Sand Ridge Secure Treatment Center Evaluation Unit of the Mendota Mental Health Institution filed a reexamination report with the court pursuant to WIS. STAT. § 980.07.[2] Dr. Warner's report stated that Brown had "reduced his risk for sexually violent behavior to the point that he

---

release . . ., the examiner shall report on the type of treatment and services that the person may need while in the community on supervised release.

[2] WISCONSIN STAT. § 980.07 provides:

**Periodic reexamination; report. (1)** If a person has been committed under s. 980.06 and has not been discharged under s. 980.09, the department shall conduct an examination of his or her mental condition within 6 months after an initial commitment under s. 980.06 and again thereafter at least once each 12 months for the purpose of determining whether the person has made sufficient progress for the court to consider whether the person should be placed on supervised release or discharged. At the time of a reexamination under this section, the person who has been committed may retain or seek to have the court appoint an examiner as provided under s. 980.03 (4).

(2) Any examiner conducting an examination under this section shall prepare a written report of the examination no later than 30 days after the date of the examination. The examiner shall

could be considered for a supervised release." Consequently, on December 5, 2002, Brown petitioned for supervised release. The court, pursuant to Wis. STAT. § 980.08(3), then ordered an updated report advising whether Brown should be granted supervised release. Dr. Warner prepared that report, which stated that Brown "ha[d] completed sufficient [sexually violent person] treatment at [Sand Ridge] to reduce his risk for sexually violent behavior to the point that he has become an appropriate subject for supervised release."

¶ 5. Prior to the hearing on Brown's petition, the State asked the court to order Dr. Kotkin to file his August 26 report, as required by statute. Over Brown's objection, the court did so. The court also commented that while the passage of time might reduce the weight Dr. Kotkin's report would carry, its tardy filing did not necessarily eliminate its evidentiary value given the ongoing nature of the case and the continuing evaluation of Brown's condition.

¶ 6. On January 30, 2003, the court held the hearing on Brown's petition. Dr. Warner's original and updated reports were admitted. Dr. Warner was the only witness. He recommended supervised release with restrictions, including residence in a supervised setting, anti-depressant medication, continued sex offender and substance abuse treatment, and regular monitoring with drug testing and polygraph examinations.

place copy of the report in the person's medical records and shall provide a copy of the report to the court that committed the person under s. 980.06.

(3) Notwithstanding sub. (1), the court that committed a person under s. 980.06 may order a reexamination of the person at any time during the period in which the person is subject to the commitment order.

¶ 7. At the State's request, the court also reviewed Dr. Kotkin's August 26 report. Brown objected, arguing that the report was irrelevant to his current mental condition, and that its introduction violated his right of confrontation. One month later, at the hearing set for the court's decision, Brown also argued that the report was hearsay. Overruling Brown's objection, the court acknowledged that the report was hearsay, expressed some doubt about its admissibility, but concluded that: (1) the report was relevant; (2) the fair and prompt administration of justice allowed its introduction, *see* Wis. Stat. § 901.02;[3] and (3) "confrontation rights [did] not require" Dr. Kotkin's presence, given the nature of the proceeding and the implicit recognition that the court's appointment of Dr. Kotkin, to which neither party objected, established his qualifications to provide his report and opinion.

¶ 8. In its decision denying Brown's petition, the court briefly discussed Dr. Kotkin's report. Noting, however, that it had been prepared several months prior to the hearing, the court stated that the report was "not very helpful in deciding where Mr. Brown is today." The court concluded that the State had proven by "clear and convincing evidence" that "it remains much more likely than not that [Brown] would re-

---

[3] The court, at this point, while mentioning only Wis. Stat. § 980.08(5), actually paraphrased portions of Wis. Stat. § 901.02, which provides: **"Purpose and construction.** Chapters 901 to 911 shall be construed to secure fairness in administration, elimination of unjustifiable expense and delay, and promotion of growth and development of the law of evidence to the end that the truth may be ascertained and proceedings justly determined."

offend at some point over the course of the rest of his life even while supervised in the community." *See* Wis. Stat. § 980.08(4).

¶ 9. Brown argues that Dr. Kotkin's report was inadmissible hearsay and, without it, the evidence was insufficient to support the court's conclusion. The State responds that the report was admissible as residual hearsay under § 908.03(24),[4] and, with or without the report, that the evidence was sufficient. We conclude that although, as the State argues, the report also may have been admissible as residual hearsay, it was admissible "by statute" under Wis. Stat. §§ 908.02 and 980.08(3). We also conclude that the evidence was sufficient to support the circuit court's conclusion.

## II. DISCUSSION

### A. Dr. Kotkin's Report

¶ 10. At the hearing, Brown acknowledged Dr. Kotkin's expertise to render opinions related to the ultimate issue and conceded that either party could have called him to testify. And although, at the hearing, Brown objected to the introduction of Dr. Kotkin's report, on appeal he does not dispute that, under Wis. Stat. § 980.08(3), Dr. Kotkin was required to file it with the court. Brown argues, however, that, without Dr.

---

[4] Wisconsin Stat. § 908.03(24) provides: "**Hearsay exceptions; availability of declarant immaterial.** The following are not excluded by the hearsay rule, even though the declarant is available as a witness: **(24)** Other exceptions. A statement not specifically covered by any of the foregoing exceptions but having comparable circumstantial guarantees of trustworthiness."

Kotkin testifying, the report was inadmissible hearsay and its admission violated his confrontation rights under both the United States and Wisconsin Constitutions.

■

¶ 11. The parties agree that Dr. Kotkin's report was hearsay. *See* Wis. Stat. § 908.01(3) (" 'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted."). "The general rule is that when there is an objection, hearsay evidence is inadmissible unless it comes within an exception to the rule." *R.S. v. Milwaukee County*, 162 Wis. 2d 197, 204, 470 N.W.2d 260 (1991); *see* Wis. Stat. § 908.02 ("Hearsay is not admissible except as provided by these rules or by other rules adopted by the supreme court or by statute."). Whether a hearsay statement comes within an exception and is admissible (assuming its relevance and admissibility in other respects) is a legal issue we review *de novo. See State v. Joyner*, 2002 WI App 250, ¶ 16, 258 Wis. 2d 249, 653 N.W.2d 290. We conclude that Dr. Kotkin's report was admissible " 'as provided . . . by statute.' " *See R.S.*, 162 Wis. 2d at 206 (citation and emphasis omitted).

¶ 12. On appeal, Brown anchors his argument in *R.S.*, where the supreme court decided whether, in a contested guardianship proceeding, a psychologist's "written statement," under Wis. Stat. § 880.33 (1987–88),[5] "may be introduced as evidence without the

---

[5] Wisconsin Stat. § 880.33 (1987–88) provided, in part:

**Incompetency; appointment of guardian. (1)** Whenever it is proposed to appoint a guardian on the ground of incompetency, a licensed physician or licensed psychologist, or both, shall furnish a written statement concerning the mental condition of the pro-

in-person testimony of the psychologist." *Id.* at 199. Concluding that the psychologist's report could not be introduced, the supreme court rejected this court's determination that it was admissible "as provided . . . by statute." *Id.* at 206 (citation and emphasis omitted). Understandably, therefore, Brown contends that *R.S.* controls. Carefully studied, however, *R.S.* actually undermines Brown's argument.

¶ 13. In *R.S.*, the supreme court rejected this court's conclusion that WIS. STAT. § 880.33 provided for the admissibility of the psychologist's report. *Id.* at 205–06. The supreme court emphasized that § 880.33 was "silent about *who retains the licensed professional* to evaluate the proposed ward . . . [and] about *whether the report must be furnished to or filed with the circuit court.*" *Id.* at 206–07 (emphases added). On both bases, WIS. STAT. § 980.08(3) is significantly different. Unlike § 880.33, § 980.08(3) specifies that only "the court shall appoint" the licensed professional. And unlike § 880.33, § 980.08(3) requires that the professional "furnish a written report of the examination to the court."

¶ 14. These distinctions, we conclude, make all the difference. Generally, where a party secures the services of a psychologist or other professional in support of an action, that party knows that the professional will be subject to scrutiny through the adversarial process. But where, as we see in WIS. STAT. § 980.08(3), *the court* "shall appoint" a professional to "furnish a written report" providing guidance for the court's consideration of the ultimate issue, it would be absurd to conclude that admissibility was not "provided . . . by statute." WIS. STAT. § 908.02; *see State ex rel. Sielen v.*

posed ward, based upon examination . . . . A copy of the statement shall be provided to the proposed ward, guardian ad litem and attorney . . . .

*Circuit Court for Milwaukee County*, 176 Wis. 2d 101, 109, 499 N.W.2d 657, 660 (1993) (court should interpret a statute to avoid an absurd result). The report and its author, of course, still may be subjected to adversarial testing (and here, as Brown concedes, he could have called Dr. Kotkin as a witness). But the fact that a party may decline to call a witness should not deprive the court of the very advice the statute required it to obtain.[6] Accordingly, we conclude that Dr. Kotkin's report was admissible hearsay "as provided . . . by statute," under §§ 908.02 and 980.08(3).

---

[6] The State also contends that the report qualifies as residual hearsay under Wis. Stat. § 908.03(24), which provides for the admissibility of "[a] statement not specifically covered by any of the foregoing exceptions but having comparable circumstantial guarantees of trustworthiness." While we see no flaw in the State's theory, we need not decide whether the report also would be admissible on this basis. *See State v. Blalock*, 150 Wis. 2d 688, 703, 442 N.W.2d 514 (Ct. App. 1989) (cases are decided on narrowest grounds).

Brown also contends that the introduction of the report violated his right of confrontation under both the United States and Wisconsin Constitutions. He barely develops his argument, however, *see Barakat v. DHSS*, 191 Wis. 2d 769, 786, 530 N.W.2d 392 (Ct. App. 1995) (appellate court need not consider "amorphous and insufficiently developed" arguments); thus, we need not address it. More importantly, Brown ignores the obvious: he concedes that he could have called Dr. Kotkin as a witness, thus assuring confrontation. *See Salveson v. Douglas County*, 2001 WI 100, ¶¶ 37–38, 245 Wis. 2d 497, 630 N.W.2d 182 (under the rule of judicial estoppel, a party may not knowingly relinquish a right at trial and then base a claim of error on its loss).

## B. The Sufficiency of the Evidence

¶ 15. Brown next argues that the State failed to prove, by clear and convincing evidence, that he should not be granted supervised release. He maintains that because the State's only witness recommended supervised release, the court erroneously exercised discretion in denying his petition. We disagree.

¶ 16. A circuit court exercises discretion in determining whether to grant or deny a petition for supervised release under WIS. STAT. § 980.08(4). We will uphold the circuit court's decision if it was based on a logical interpretation of the facts and a correct application of the proper legal standards. *State v. Seibert*, 220 Wis. 2d 308, 314, 582 N.W.2d 745 (Ct. App. 1998).

¶ 17. WISCONSIN STAT. § 980.08(4) provides, in part:

> The court shall grant the petition [for supervised release] unless the state proves by clear and convincing evidence that the person is still a sexually violent person and that it is still substantially probable that the person will engage in acts of sexual violence if the person is not continued in institutional care. In making a decision under this subsection, the court may consider, without limitation because of enumeration, the nature and circumstances of the behavior that was the basis of the allegation in the petition [alleging that a person is a sexually violent person] under s. 980.02(2)(a), the person's mental history and present mental condition, where the person will live, how the person will support himself or herself and what arrangements are available to ensure that the person has access to and will participate in necessary treatment, including pharmacological treatment . . . .

Explicitly, therefore, the statute anticipates that a circuit court may base its decision on factors beyond those addressed by the testimony of witnesses at the hearing. Most obviously, for example, even if no witness at the hearing provided details of a petitioner's sex offenses, a careful court would consider "the nature and circumstances" of the petitioner's behavior leading to the commitment. *See id.*

¶ 18. Moreover, a circuit court is not required to accept the opinion of an expert witness who testifies at the hearing; instead, the court exercises discretion in accepting or rejecting the expert's testimony as it deems appropriate. *State v. Kienitz*, 227 Wis. 2d 423, 438, 597 N.W.2d 712 (1999). The court determines the credibility of the expert and the weight of his or her opinion. *Id.* at 440. If the record supports more than one reasonable inference, we must accept the circuit court's inference unless it is without support as a matter of law. *State v. King*, 187 Wis. 2d 548, 562, 523 N.W.2d 159 (Ct. App. 1994).

¶ 19. Brown does not identify any clearly erroneous factual findings. He does not contend that the court's inferences were unsupportable as a matter of law. He does not claim that the circuit court failed to apply the correct legal standards. Instead, he asks us to disregard Dr. Kotkin's report (a request we have just rejected) and draw different inferences based, essentially, if not entirely, on Dr. Warner's opinion that he is ready for supervised release. We conclude, however, that the record supports the circuit court's conclusion.

¶ 20. Dr. Warner's testimony provided information from Brown's treatment records. Those records established, among other things, that Brown was diagnosed as suffering from pedophilia, alcohol abuse, and

an "Axis II ... personality disorder with anti-social features." In Dr. Warner's opinion, these problems "caused Mr. Brown to experience serious difficulty controlling his sexually violent behavior." Based on three actuarial instruments used to rate Brown's risk of re-offending, Dr. Warner explained that, at the time Brown was committed, he was a high risk to re-offend. Dr. Warner added that the actuarial ratings are "based on factors that don't change."

¶ 21. Dr. Warner opined that, because of the treatment he had completed, Brown did not remain "as high a risk" as when he was committed. Dr. Warner warned, however, that Brown should continue treatment, alcohol abuse counseling, and Zoloft, an anti-depressant, "to reduce his sex drive." Dr. Warner testified that Brown need not be "in a secure setting," but also warned that his supervised group home or halfway house placement should initially be supported by "electronic monitoring" and unscheduled monitoring visits, and that throughout his placement he should receive "drug testing, polygraph examinations, [and] whatever the supervisory people think is appropriate." Dr. Warner also provided some information about Brown's behavior, including his molestation of all three of his sisters for about two years and, later, of the thirteen-year-old runaway. Dr. Warner cautioned against Brown having any unsupervised contact with his family.[7]

¶ 22. Clearly, therefore, while recommending supervised release, Dr. Warner's opinion was heavily

---

[7] The court, while not giving Dr. Kotkin's report much weight, did observe that Dr. Kotkin had concluded that, in the court's words, "[t]he total time frame for the new and better[-] invested Mr. Brown was not sufficiently long to allow for, nor to support the conclusion that the level of risk ha[d] now dropped below that standard" for continued commitment.

veiled with qualifications and reservations. It neither required nor compelled the conclusion that Brown should be granted supervised release. Logically, a court could infer that Brown remained a sexually violent person and, particularly given all the restrictions that Dr. Warner said would have to accompany his release, a court could also infer that Brown was "still substantially probable" to "engage in acts of sexual violence if . . . not continued in institutional care." *See* WIS. STAT. § 980.08(4). Although the court struggled to articulate the exact basis on which it reached this apparently close call, we see nothing illogical in its assessment of the facts and nothing improper in its application of the law.

*By the Court.*—Order affirmed.