Cindy HORAK, Individually and as
Special Administrator of the
Estate of George Benzinger, Plaintiff-Appellant,

v.

BUILDING SERVICES INDUSTRIAL SALES COMPANY,
Defendant-Respondent,

TRANE US INC., f/d/b American Standard Inc.,
Metropolitan Life Insurance Company and
Owens Illinois, Inc., Defendants.

Court of Appeals

*No. 2011AP414. Submitted on briefs February 28, 2012.
—Decided April 17, 2012.*

2012 WI App 54

(Also reported in 815 N.W.2d 400.)

On behalf of the plaintiff-appellant, the cause was submitted on the briefs of *Robert G. McCoy* and *Jonathan Freilich* of *Cascino Vaughan Law Offices* of Chicago, IL.

On behalf of the defendant-respondent, the cause was submitted on the brief of *John J. Laffey, Thomas Gonzalez, Sarah Thomas Pagels* and *Kristina C. Lemanski* of *Whyte Hirschboeck Dudek S.C.* of Milwaukee.

Before Curley, P.J., Fine and Brennan, JJ.

¶ 1. BRENNAN, J. Cindy Horak, individually and as the special administrator of the estate of her father, George Benzinger, appeals from the circuit court's judgment dismissing her claims against Building Services Industrial Sales Company (BSIS). Horak asserts that the circuit court erred when it found that the invoices Horak wanted to submit to prove that BSIS exposed

Benzinger to asbestos, ultimately leading to his death, were inadmissible hearsay. Because we agree with Horak that the invoices are admissible, we reverse and remand this case to the circuit court.

## BACKGROUND

¶ 2. Horak filed this action, asserting claims of negligence and strict tort liability, against BSIS.[1] Horak alleged that BSIS supplied asbestos products to Benzinger's former employer while Benzinger worked there from 1950 through 1982, and that exposure to the asbestos caused Benzinger to develop lung cancer and resulted in his death.

¶ 3. In December 2006, BSIS filed a summary judgment motion contending that Horak was unable to prove that her father was exposed to asbestos products supplied to Benzinger's employer by BSIS. In opposition to BSIS's motion, Horak submitted fifty-one pages of invoices purportedly representing that BSIS sold asbestos products to Benzinger's employer while Benzinger worked there. Horak had obtained the invoices as part of 38,000 pages of documents produced by BSIS's attorney in 2006 in response to Horak's discovery request.[2] BSIS did not contest the admissibility of the invoices,

---

[1] Horak named numerous other defendants in her complaint, none of whom are relevant on appeal.

[2] Neither Horak nor BSIS cite to any evidence supporting their assertions that the invoices were produced by BSIS's 2006 counsel, and BSIS has since retained new counsel. Instead, both parties merely cite to their arguments from the hearing on admissibility. As we have repeatedly stated, attorneys' arguments are not evidence. *Merco Distrib. Corp. v. O & R Engines, Inc.*, 71 Wis. 2d 792, 795–96, 239 N.W.2d 97 (1976). However, because BSIS does not dispute Horak's assertions that the invoices were produced by its former counsel, and in fact,

but rather argued that the invoices were insufficient to create a genuine issue of material fact regarding the cause of Benzinger's death. The circuit court agreed and granted summary judgment. Horak appealed. We reversed and remanded the case back to the circuit court, holding that the invoices created a reasonable basis for a jury to find that the asbestos products supplied by BSIS were a cause of Benzinger's death.

¶ 4. Following the remand, BSIS, represented by new counsel, filed a motion *in limine,* asking the circuit court to exclude the invoices from use at trial, arguing that they constituted inadmissible hearsay. Following a two-day hearing on BSIS's motion, the circuit court held that the invoices were hearsay and did not fall under either the business-records or ancient-documents exceptions to the hearsay rule.[3]

¶ 5. The parties stipulated that the circuit court's ruling that the invoices were inadmissible was dispositive.[4] As such, the circuit court granted BSIS's oral motion to dismiss the case with prejudice and entered judgment accordingly. Horak subsequently filed a mo-

---

appears to agree, we accept the fact as true for purposes of this appeal. *See Charolais Breeding Ranches, Ltd. v. FPC Sec. Corp.,* 90 Wis. 2d 97, 109, 279 N.W.2d 493 (Ct. App. 1979) (unrefuted facts are deemed admitted).

[3] In its oral decision during the hearing on admissibility, the circuit court distinguished between two different groups of invoices—those produced in 1996 in preparation for the deposition of BSIS's former-president and owner, Donald Popalisky, and those included in the 38,000 pages of documents turned over to Horak in 2006 by BSIS's former counsel. Only the documents produced in 2006 are at issue on appeal.

[4] Benzinger worked for a small company; all of his co-workers are deceased and his employer's records are not available. Horak acknowledges that the only evidence of BSIS's relationship with Benzinger's employer is the invoices.

tion to reconsider the ruling as to the inadmissibility of the invoices under the ancient-documents exception. The circuit court denied her motion. Horak appeals.

¶ 6. Additional facts are included below as necessary.

## DISCUSSION

¶ 7. Horak argues that the circuit court erred in dismissing the invoices as inadmissible hearsay because, while she concedes that the statements contained in the invoices constitute hearsay, she contends that they fall within the ancient-documents exception to the general hearsay rule.[5] She further argues that the circuit court's ruling violates the law-of-the-case doctrine and that BSIS waived its argument that the invoices are inadmissible when it failed to raise the issue in its summary judgment motion prior to the first appeal. Because we agree with Horak that the invoices are admissible, we need not address the remainder of her arguments.

¶ 8. Assuming, as do the parties, that the statements in the invoices are hearsay, *see* WIS. STAT. §§ 908.01(3) & 908.02 (2009–10),[6] the ancient-documents exception permits their admission if the invoices were in existence at least twenty years ago and their authenticity can be established, *see* WIS. STAT. § 908.03(16). The authenticity requirement is meant

---

[5] Horak does not argue on appeal, as she did before the circuit court, that the invoices fall within the business-records exception to the hearsay rule. As such, we deem that argument abandoned. *See Tatur v. Solsrud*, 167 Wis. 2d 266, 269, 481 N.W.2d 657 (Ct. App. 1992).

[6] All references to the Wisconsin Statutes are to the 2009–10 version unless otherwise noted.

"simply [as] a reminder that pursuant to [Wɪs. Sᴛᴀᴛ. § ] 909.015(8) an ancient document is not authenticated solely by reason of age but requires absence of suspicion and a repository consistent with authenticity." Judicial Council Committee's Note, 1974, § 908.03(16).

¶ 9. The authentication requirement "as a condition precedent to admissibility [is] satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." Wɪs. Sᴛᴀᴛ. § 909.01. An ancient document can be authenticated by demonstrating that it "(a) Is in a condition that creates no suspicion concerning its authenticity; (b) Was in a place where it, if authentic, would likely be; and (c) Has been in existence 20 years or more at the time it is offered." Wɪs. Sᴛᴀᴛ. § 909.015(8). Here, it is undisputed that the invoices in question are at least twenty years old. As such, we need only address whether the condition and location of the invoices suggest they are authentic.

¶ 10. The circuit court concluded that the invoices did not fall within the ancient-documents exception because Horak failed to establish that the invoices were "in a place where [they], if authentic, would likely be." *See id.* In other words, the circuit court concluded that business invoices are not likely to be held by a business's attorney. In relevant part, the circuit court stated:

> There is a[n] ongoing or subsequent production of records after [1996] that can merely be described as the lawyers produced them with no foundation as to where they actually came from other than they were in [BSIS's former] lawyer's office.
>
> . . . .
>
> They — There's no foundation that they are an-

408

cient records because we don't know whether [the invoices] were in a place where [they], if authentic, would likely be. That has to be on a record by record basis, and we — plaintiff can't do that.

██

¶ 11.   Ordinarily, we review the circuit court's evidentiary rulings for an erroneous exercise of discretion. *State v. Joyner*, 2002 WI App 250, ¶ 16, 258 Wis. 2d 249, 653 N.W.2d 290. "Whether a statement is admissible under a hearsay exception, however, is a question of law that we review *de novo*." *Id.* (emphasis added). Applying that standard of review, we conclude that the circuit court misapplied the ancient-documents exception.

██

¶ 12.   First, addressing the location of the invoices, we conclude that business invoices in possession of a business's attorney are in a place where, if authentic, they are likely to be. That is particularly true here, where BSIS supplied asbestos products and has been actively engaged in litigation for several decades. We can think of no reason for an agent of a business to possess fraudulent invoices against the business's interest. The mere fact that the invoices were possessed and turned over to Horak by BSIS's agent—its former attorney—suggests their authenticity.[7] *See* WIS. STAT.

---

[7] Our reasoning is similar to that behind WIS. STAT. § 908.01(4)(b)3.'s declaration that a statement is not hearsay when it is offered against a party and made "by a person authorized by the party to make a statement concerning the subject." Section 908.01(4)(b)3. admits such statements on the grounds that "justice and fairness should permit a litigant to use assertions for which an opposing party is responsible because that party has either expressly or by implication adopted them." RALPH ADAM FINE, FINE'S WISCONSIN EVIDENCE 322 (2d ed. 2008).

§ 909.01 ("requirements of authentication . . . are satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims"). To rule otherwise would encourage parties engaged in litigation to defeat the admissibility of their own records by simply moving them to their attorneys' offices.

¶ 13. We are unpersuaded by BSIS's argument that authentication requires Horak to show how the invoices travelled from BSIS's offices to its attorney's office. Authentication does not require Horak to prove that the invoices are *incontrovertibly* what they purport to be, but rather authentication merely requires Horak to present evidence "*sufficient to support a finding*" that the invoices are what they purport to be. *See id.* (emphasis added). Whether Horak can explain how the invoices were transported from BSIS's offices to its attorney's office goes toward the weight of the invoices and is a question properly placed before a jury. *See* Wis. Stat. § 901.04(2) ("When the relevancy of evidence depends upon the fulfillment of a condition of fact, the judge shall admit it upon, or subject to, the introduction of evidence sufficient to support a finding of the fulfillment of the condition.").

¶ 14. Second, we conclude that the condition of the invoices suggests their authenticity. The documents include: BSIS's name and address at the top; invoice numbers; the buyers' names and addresses; the date of the sales; the products sold; the quantities purchased;

---

Horak does not argue that the invoices are admissions of a party opponent, and therefore not hearsay, so we do not address the issue. However, at least on its face, the statute appears to be applicable, and the sentiment behind the statute guides our decision that invoices held by a business's attorney are in a place, where if authentic, they are likely to be.

the costs per item; and the dates of the sales. On their face, the documents appear authentic. In fact, during a 2008 deposition in another case, Thomas Popalisky, current president of BSIS, testified that the invoices "appeared to be documents from Building Service Industrial Sales prior to the time I worked there." Moreover, in an action against BSIS filed by another plaintiff, BSIS stated that the invoices were legitimate and used the invoices to its advantage, arguing that the "[i]nvoices undisputedly establish that BSIS regularly sold fiberglass insulation [as opposed to asbestos insulation] to [the plaintiff's employer]."[8] In the very least,

---

[8] As part of her motion for reconsideration before the circuit court, Horak submitted documents BSIS submitted in *Risse v. Allied Insulation Supply Co.*, Milwaukee County Case No. 2006CV8105, including: (1) BSIS's Brief in Support of its Motion for Summary Judgment; (2) BSIS's Reply Brief in Support of its Supplemental Motions in Limine; and (3) selected BSIS affidavits. BSIS argues that we should not consider its arguments and statements made in *Risse* because Horak presented that evidence for the first time in her motion for reconsideration. Because the evidence was not before the circuit court at the time it issued its initial decision, BSIS contends the evidence is not properly before this court on appeal. We rejected BSIS's argument in a September 23, 2011 order issued in response to BSIS's motion to strike. In the September 23 order, we stated:

> It is true that, when we review a judgment or order appealed from, we are generally limited to conducting our review based on the information that was before the court at the time of its decision. *See State v. Aderhold*, 91 Wis. 2d 306, 314, 284 N.W.2d 108 (Ct. App. 1979). However, the record on appeal—the physical items sent to this court—incudes any "[o]rder made after judgment relevant to the appeal and papers upon which the order is based" as well as "[a]ny other paper or exhibit filed in the court requested by a party to be included in the record[.]" Wis. Stat. Rule 809.15(1)(a)8. & 10. Thus, we are not persuaded that the record itself is defective. (Footnote omitted.)

411

there is "evidence sufficient to support a finding" that the condition of the invoices supports an inference that they are what they appear to be. *See id.*

¶ 15. BSIS argues that Horak cannot authenticate the invoices because the 38,000 pages of documents appear to be randomly preserved and no living person can verify their authenticity. Again, BSIS raises the bar too high for authentication. WISCONSIN STAT. § 909.01 only requires that Horak present evidence "sufficient to support a finding that the matter in question is what [she] claims." On their face, the invoices appear to be legitimate, so much so that BSIS's current president could see nothing suggesting they were not BSIS invoices. In other words, the invoices appeared to him to be "in a condition that creates no suspicion concerning [their] authenticity." *See* WIS. STAT. § 909.015(8)(a). BSIS's contention that the documents seem to be randomly preserved and that no living person can verify their authenticity simply goes to the weight of the evidence and presents issues properly resolved by the trier of fact. *See* WIS. STAT. § 901.04(2).

¶ 16. Because we conclude that the circuit court improperly applied WIS. STAT. §§ 909.01 and 909.015(8) when finding the invoices inadmissible, we reverse and remand this case back to the circuit court with directions to admit the invoices at trial under the ancient-documents exception to the general hearsay rule.

*By the Court.*—Judgment reversed and cause remanded with directions.

For those same reasons, we consider BSIS's arguments and statements in *Risse* on appeal.