MICHAEL J. GABLEMAN, J.
¶ 1. We review an unpublished, per curiam decision of the court of appeals[1] reversing the Jefferson County Circuit Court's judgment of conviction against the defendant, James R. Hunt.[2] At trial, a jury found Hunt guilty of one count of causing a child under 13 to view or listen to sexual activity in violation of Wis. Stat. § 948.055 (2009-10).[3]
¶ 2. Two issues are presented for our consideration: 1) whether the circuit court erred in excluding the testimony of Hunt's friend, Matt Venske, that he never sent Hunt a video of a man and woman engaging *584 in sexual intercourse, and if so, whether the error was harmless; and 2) whether Hunt's trial counsel provided ineffective assistance.
¶ 3. Because Venske's testimony was relevant to Hunt's theory of defense and corroborated his version of events, we hold that the circuit court erred in excluding the testimony. However, we conclude that the State met its burden of proving that it is "clear beyond a reasonable doubt that a rational jury would have found the defendant guilty absent the error," State v. Harvey, 2002 WI 93, ¶ 49, 254 Wis. 2d 442, 647 N.W.2d 189 (quoting Neder v. United States, 527 U.S. 1, 18 (1999)), and thus, the error was harmless. We further determine that Hunt's ineffective assistance of counsel arguments fail under the two-part inquiry of Strickland v. Washington, 466 U.S. 668, 687 (1984). We conclude that, under the totality of the circumstances, Hunt received a fair trial, and our confidence in the judgment is not undermined. Accordingly, we reverse the decision of the court of appeals and reinstate the circuit court's judgment of conviction and affirm its denial of Hunt's post-conviction motion.
I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY
¶ 4. On November 11, 2010, James R. Hunt was charged with one count of sexual assault of a child under 13 in violation of Wis. Stat. § 948.02(1), and one count of causing a child under 13 to view or listen to sexual activity in violation of Wis. Stat. § 948.055(1) and (2)(a). The complaining witness was Hunt's adopted daughter, A.H. A.H. alleged that Hunt had placed her hand on his penis when she was six years old, and that when she was twelve, he had shown her three inappropriate images on his cell phone. The first *585 image was a cartoon depiction of a woman in a dress bending over. The second image was a picture of a woman undressed from the waist up posing over a deer head and holding the antlers. The third image was a video of a man and a woman engaged in sexual intercourse.
¶ 5. Hunt pled not guilty to both charges, and the case was tried in the Jefferson County Circuit Court. During the preliminary hearing, A.H. testified that when Hunt had shown her the graphic images, he told her "this is the stuff that Matt sends me," referring to Hunt's friend, Matt Venske, who would later testify at trial for the defense. This testimony was supported by A.H.'s account of events to Police Officer Terrance Nachtigal of the Fort Atkinson Police Department during his initial investigation of the incident, as recorded in his police report.[4]
¶ 6. Prior to trial, the court ruled the first two images described above did not constitute "sexually explicit conduct" under Wis. Stat. § 948.055(1).[5] How *586 ever, the court determined that the video of the man and woman engaged in sexual intercourse could satisfy the statutory requirements. Hunt's counsel filed a pretrial motion in limine arguing for exclusion of testimony regarding any images other than the video of sexual intercourse, citing Wis. Stat. § 906.08(2),[6] but did not mention the motion during the final pretrial motion hearing. Nevertheless, Hunt's counsel objected at trial to statements regarding the two other images described by A.H. and also moved for a mistrial on that basis on two occasions. The circuit court ruled that evidence concerning these two images was relevant and admissible, explaining:
Well, these two images are not sexually explicit conduct under the statute.
They are, however, inappropriate images for an adult male to show to a minor female.
Mr. Hunt allegedly displayed these images to [A.H.] in a very short period of time on one particular occasion. So, all these three images are relevant to provide context and to fill out the picture of what occurred at that time.
These are not separate or remote incidents. All three images were allegedly displayed at about the same time.
*587 Only one fits the definition of sexually explicit conduct. The other two, however, are inappropriate given the circumstances and are relevant to allow the State to explain the entire relevant set of circumstances to the jury.
Hunt's counsel continued to object that the other images were irrelevant each time A.H. testified regarding their content.
¶ 7. At trial, A.H. testified that Hunt had shown her the images in question in the basement of her grandparents' house. She explained that Hunt walked across the room and held the cell phone in his hand and laughed as he showed her the images, and he admonished her to never tell her mother. On cross-examination, Hunt's counsel asked A.H. the following question: "When your father showed you the pictures on his cell phone, he said something like, hey, do you want to see the kind of stuff that Matt sends me?" The State objected on hearsay grounds, and Hunt's counsel countered that the evidence was admissible as a statement against interest. The circuit court sustained the State's objection.
¶ 8. Hunt testified that he had never shown A.H. any of the images she described. Hunt explained that, on the day in question, he received a text message from Venske that said "just be glad you don't have a hernia like this." Accompanying the message was a picture of a testicular hernia. Hunt had recently undergone surgery for an umbilical hernia, and he believed the message was meant as a joke. Hunt testified that A.H. was standing next to him when he received the text, but he did not intentionally show it to her, and he immediately turned his cell phone off after viewing the picture. Hunt also stated the image of a woman posing with a deer head described by A.H. was actually the *588 screensaver on his cell phone for approximately a year and a half, and although he never purposefully showed it to A.H., she had seen it on his cell phone during that period. Hunt maintained he had never possessed any image of a cartoon depiction of a woman bending over or any videos of sexual intercourse, and he denied ever receiving text message images from anyone other than Venske.[7]
¶ 9. Hunt's theory of defense was that A.H. had seen the image of the testicular hernia and embellished the event to include other, more explicit images. Hunt believed the charges against him stemmed from his recent divorce from A.H.'s biological mother and the ensuing battle for custody of their biological daughter, J.H. Hunt also testified that, several months before A.H. leveled accusations against him, she had gotten into a fight with Hunt's mother during a family trip and did not see Hunt for several months after that incident.
¶ 10. Officer Nachtigal also testified at trial. Officer Nachtigal initially interviewed A.H. at the Fort Atkinson Police Department regarding her complaint against Hunt. Officer Nachtigal explained that, based on his interview with A.H., he had reason to believe Venske was the source of the inappropriate images *589 allegedly sent to Hunt's cell phone. Following his interview with A.H., Officer Nachtigal interviewed Venske and asked him whether he had ever sent any videos to Hunt from his cell phone or computer. Officer Nachtigal testified that Venske denied sending any videos from his cell phone. Hunt's counsel then asked Officer Nachtigal if Venske admitted sending videos to Hunt from his computer, but the State objected on hearsay grounds.
¶ 11. The circuit court overruled the State's objection after issuing the following hearsay instruction to the jury:
A witness is not allowed to tell us what somebody else told him to prove that it happened. But the officer, or any witness, is allowed to discuss other conversations simply to establish who said what to whom.
So, if somebody wants to prove that Mr. Venske —.... Did something or didn't do something, they either need to have a witness who saw him do it or have Mr. Venske come in and testify himself.
When the Officer is being allowed to testify about this conversation, it's not to be used by you to determine whether Mr. Venske actually sent something from his phone or not.
It's being admitted simply so you understand the conversation that took place between these two gentlemen. . . .
A statement is not hearsay if it's not used to prove the truth of the matter asserted, is the technical legal definition.
¶ 12. Hunt's counsel then called Venske, who testified he had sent Hunt text messages that occasionally contained pictures. Venske explained he had sent *590 Hunt a picture of a testicular hernia as a joke following Hunt's hernia surgery, and he also had sent Hunt a picture of a topless woman posing with a deer head. Hunt's counsel then attempted to ask Venske the following question: "There has been allegations against my client that you sent something to Mr. Hunt and he showed it to his daughter involving a man and woman engaging in intercourse. Did you ever send such — " The court interrupted counsel mid-question and pointed out that there was no allegation that the disputed video came from Venske.
¶ 13. Hunt's counsel replied that Officer Nachtigal had recently testified that A.H. told him Venske was the source of the video. Therefore, it was important for the defense to counter that statement with Venske's own testimony that he had never sent the video. The circuit court disagreed, noting that the question posed by Hunt's counsel to Officer Nachtigal centered on the issue of where A.H. claimed Hunt obtained the video. The court explained, "It seems to me that you are the one who is introducing it in the first place and you are the one that is also introducing contradictory evidence concerning the source." The circuit court concluded the source of the video was a collateral issue and irrelevant to the defense.
¶ 14. During the jury instruction conference, the circuit court suggested adding language to a pattern instruction indicating that the video of sexual intercourse was the only image supporting the charges against Hunt. Both parties accepted the proposed instruction, and the jury was instructed as follows:
The second count of the information charges that between September 1st, 2009, and June 30th, 2010, in the City of Fort Atkinson, Jefferson County, Wisconsin, the defendant did commit the crime of causing a child *591 to view or listen to sexual activity, specifically, a video clip of a man and woman engaging in sexual intercourse.
(Emphasis added). The circuit court also suggested that the parties specify which image was disputed during closing arguments. In addition, the circuit court recommended additional clarifying language to the jury instruction describing the elements of causing a child to view or listen to sexual activity. If accepted, the circuit court would have delivered the following instruction to the jury:
Element Number 1, the defendant caused [A.H.] to view or listen to sexually explicit conduct. Sexually explicit conduct means actual or simulated sexual intercourse, masturbation, lewd exhibition of an intimate part.

In this case, the State alleges that the video clip of a man and woman engaging in sexual intercourse is sexually explicit conduct.

(Emphasis added).
¶ 15. Hunt's counsel objected to this latter proposed instruction, however, providing the following explanation:
I think [the instruction] amplifies it and gives some validity of the State's argument when we tell [the jury] an element of this is what the State is alleging. It's like me adding that what the defense is alleging is a defense as well.
The circuit court agreed, and the second proposed jury instruction was rejected.
¶ 16. Hunt was found not guilty of the sexual assault charge but guilty of causing a child under 13 to view or listen to sexual activity in violation of Wis. *592 Stat. § 948.055. Hunt was sentenced to seven years of probation and one year of conditional jail time.
¶ 17. Hunt appealed his conviction, arguing that the circuit court improperly excluded Venske's testimony regarding the video and that his trial counsel rendered ineffective assistance. The court of appeals reversed Hunt's conviction and remanded to the circuit court for a new trial. The court of appeals determined that the circuit court's decision to exclude Venske's testimony was erroneous, because the evidence was relevant and would have corroborated Hunt's version of events. The court of appeals also concluded that the circuit court's error was not harmless, because the outcome of the case turned on the credibility of the parties.
¶ 18. Although the State argued Officer Nachtigal's testimony regarding his interview with Venske functionally conveyed the same information as Venske's excluded testimony, the court of appeals reasoned that the circuit court's hearsay instruction prevented the jury from considering "whether Venske did or did not send anything from his phone to Hunt. . . ." State v. Hunt, No. 2012AP2185-CR, unpublished slip op., ¶ 13 (Wis. Ct. App. July 18, 2013). Further, the court of appeals noted that the circuit court's instruction specifically informed jurors "that proof of what Venske did or did not do would have to be established through Venske's testimony, only highlighting the lack of that testimony from Venske." Id. Because the court of appeals reversed Hunt's conviction based on his evidentiary claim, it did not address Hunt's ineffective assistance claims.
¶ 19. The State petitioned this court for review, which we granted on December 17, 2013. We now reverse.
*593 II. STANDARD OF REVIEW
¶ 20. This court will not disturb a circuit court's decision to admit or exclude evidence unless the circuit court erroneously exercised its discretion. State v. Ringer, 2010 WI, ¶ 24, 326 Wis. 2d 351, 785 N.W.2d 448. "A circuit court erroneously exercises its discretion if it applies an improper legal standard or makes a decision not reasonably supported by the facts of record." Weborg v. Jenny, 2012 WI 67, ¶ 41, 341 Wis. 2d 668, 816 N.W.2d 191 (citing Johnson v. Cintas Corp. No. 2, 2012 WI 31, ¶ 22, 339 Wis. 2d 493, 811 N.W.2d 756).
¶ 21. A circuit court's erroneous exercise of discretion in admitting evidence is subject to the harmless error rule. State v. Harris, 2008 WI 15, ¶ 85, 307 Wis. 2d 555, 745 N.W.2d 397. Whether the error was harmless presents a question of law that this court reviews de novo. State v. Jackson, 2014 WI 4, ¶ 44, 352 Wis. 2d 249, 841 N.W.2d 791.
¶ 22. This case also requires us to determine whether Hunt's trial counsel rendered ineffective assistance. Whether a person was deprived of the constitutional right to the effective assistance of counsel presents a mixed question of law and fact. State v. Trawitzki, 2001 WI 77, ¶ 19, 244 Wis. 2d 523, 628 N.W.2d 801. The circuit court's findings of fact will be upheld unless they are clearly erroneous. State v. Pitsch, 124 Wis. 2d 628, 634, 369 N.W.2d 711 (1985). Whether counsel's performance was deficient and *594 prejudicial to his or her client's defense is a question of law that we review de novo. Trawitzki, 244 Wis. 2d 523, ¶ 19.
¶ 23. In Strickland, 466 U.S. at 687, the United States Supreme Court set forth a two-part test for determining whether counsel's actions constitute ineffective assistance. First, the defendant must demonstrate that counsel's performance was deficient. Id.; State v. McDowell, 2004 WI 70, ¶ 49, 272 Wis. 2d 488, 681 N.W.2d 500. Second, the defendant must demonstrate that counsel's deficient performance was prejudicial to his or her defense. Strickland, 466 U.S. at 687; McDowell, 272 Wis. 2d 488, ¶ 49. This requires a showing that counsel's errors were "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Strickland, 466 U.S. at 687.
III. DISCUSSION
¶ 24. We first consider whether the circuit court erred in excluding Venske's testimony and conclude that it did. We then address whether the error was harmless and hold that it was. Finally, we examine Hunt's three ineffective assistance claims and determine that each argument fails under Strickland's two-part test.
A. The Circuit Court's Decision to Exclude Venske's Testimony was Harmless Error
¶ 25. As a threshold matter, we agree with the court of appeals and both parties that the circuit court erred in excluding Venske's testimony that he never *595 sent the video of sexual intercourse to Hunt. Venske's testimony was directly relevant to Hunt's theory of defense.[8] As explained above, Hunt's theory of defense at trial was that A.H. saw an image of a testicular hernia on Hunt's cell phone, and A.H. later embellished that event by alleging that Hunt had also shown her other, more sexually explicit, images. At trial, Venske corroborated Hunt's testimony regarding sending Hunt the photo of a testicular hernia, but the circuit court excluded his testimony that he had never sent Hunt any videos, including the video of sexual intercourse. Venske's excluded testimony would have corroborated Hunt's testimony and lent credibility to Hunt's version of events.
¶ 26. Thus, we must consider whether the circuit court's error in excluding Venske's testimony was harmless. The erroneous exclusion of testimony is subject to the harmless error rule. See Wis. Stat. § 901.03(1) ("Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected . . . ."). Harmless error analysis requires us to look to the effect of the error on the jury's verdict. State v. Weed, 2003 WI 85, ¶ 29, 263 Wis. 2d 434, 666 N.W.2d 485. For the error to be deemed harmless, the party that benefited from the error — here, the State — must prove "beyond a *596 reasonable doubt that the error complained of did not contribute to the verdict obtained." Harris, 307 Wis. 2d 555, ¶ 42 (quoting Chapman v. California, 386 U.S. 18, 24 (1967)). Stated differently, the error is harmless if it is "clear beyond a reasonable doubt that a rational jury would have found the defendant guilty absent the error." Harvey, 254 Wis. 2d 442, ¶ 49 (quoting Neder, 527 U.S. at 18).
¶ 27. This court has previously articulated several factors to assist in a harmless error analysis, including but not limited to: the importance of the erroneously admitted or excluded evidence; the presence or absence of evidence corroborating or contradicting the erroneously admitted or excluded evidence; the nature of the defense; the nature of the State's case; and the overall strength of the State's case. State v. Norman, 2003 WI 72, ¶ 48, 262 Wis. 2d 506, 664 N.W.2d 97. Although non-exhaustive, these factors assist in our review of whether the exclusion of Venske's testimony was harmless. We consider each in turn.
¶ 28. The State and Hunt naturally dispute the importance of the erroneously excluded evidence at issue in this case. Hunt contends the exclusion of Venske's testimony was vitally important because it corroborated his theory of defense. In a case that largely turns on credibility determinations, Hunt argues the court's error in excluding testimony that would have lent credibility to his version of the facts cannot be harmless.
¶ 29. To be sure, Venske's testimony was relevant to Hunt's theory of defense. This is why we agree with the parties and the court of appeals that it was error for the circuit court to exclude the evidence. The *597 exclusion of relevant evidence, however, does not automatically trigger the need for a new trial. Harmless error analysis is not intended to simply identify errors, but instead is meant to determine whether the error was consequential to the verdict obtained. For this reason, we examine the totality of the circumstances, which requires the reviewing court to gauge whether the admitted or excluded evidence contributed to the trial's outcome.
¶ 30. In determining the import of the erroneously excluded evidence, we find another factor in particular informs our analysis — that is, the presence or absence of evidence corroborating or contradicting the erroneously admitted or excluded evidence. Hunt testified at trial that Venske had never sent him any videos and, specifically, had never sent him a video of a man and woman engaging in sexual intercourse. Although Venske's testimony on this point was excluded by the circuit court, we agree with the State that Officer Nachtigal's testimony functionally served the same purpose by corroborating Hunt's version of events. See State v. Everett, 231 Wis. 2d 616, 631, 605 N.W.2d 633 (Ct. App. 1999) (holding that exclusion of evidence was harmless where other evidence was heard by the jury that "functionally conveyed the same theory of defense . . . .").
¶ 31. Hunt argues that Officer Nachtigal's testimony could not have corroborated Hunt's testimony because the jury was instructed by the circuit court that it could use Officer Nachtigal's testimony only to determine "who said what to whom," and not as evidence to ascertain "whether Venske actually sent something from his phone or not." Hunt claims this instruction to the jury rendered Officer Nachtigal's *598 testimony "wholly irrelevant" because it was "stripped of the truth of its content."
¶ 32. Hunt's argument overstates the implications of the circuit court's hearsay instruction. Simply because the jury could not use Officer Nachtigal's testimony as evidence to prove the truth of what Venske had told him does not render Officer Nachtigal's testimony immaterial. The jury could still use Officer Nachtigal's testimony as evidence to prove that Venske had told Officer Nachtigal that he sent no videos to Hunt. Undoubtedly, Venske's excluded testimony had some probative value to Hunt's defense. However, with respect to corroborating Hunt's testimony that Venske did not send the video of sexual intercourse to Hunt, we conclude that there is little meaningful difference between Venske's assertion that he did not send Hunt a video and Officer Nachtigal's testimony that Venske told him he did not send Hunt a video. The circuit court's instruction accurately informed the jury that it could not conclude, based solely on Officer Nachtigal's testimony, that Venske did not send the video. However, the jury still heard that Venske had represented to the police that he did not send the video, which corroborated what Hunt had already alleged at trial.
¶ 33. Further, the erroneously excluded evidence would not have assisted Hunt's defense by contradicting the State's evidence regarding the source of the images. The State never suggested at trial that Hunt obtained the images from Venske. In fact, no evidence regarding the source of the images was ever introduced by the State at trial. So, while the excluded evidence would have lent credibility to Hunt's version of events, it would not have served to weaken the State's case on *599 the issue of where Hunt obtained the sexually explicit video, because the State never alleged it was sent by Venske.
f 34. We conclude our harmless error analysis by examining the nature of the defense, the nature of the State's case, and the overall strength of the State's case. Norman, 262 Wis. 2d 506, ¶ 48. Hunt was charged with one count of causing a child to view or listen to sexual activity in violation of Wis. Stat. § 948.055(1). The statute prohibits "intentionally caus[ing] a child who has not attained 18 years of age ... to view or listen to sexually explicit conduct. . . ." Id. Under the plain language of the statute, the State is not required to establish the source of the sexually explicit conduct shown to the complainant. The State need only demonstrate that the defendant showed sexually explicit conduct to a child under 18 years of age. Since the source of the video was not a required element of the State's case, the value of Venske's excluded testimony lay solely in its potential to corroborate Hunt's version of events. Thus, any harm arising from the exclusion of Venske's testimony was minimized by the admission of Officer Nachtigal's testimony.
¶ 35. Moreover, the fact that Officer Nachtigal's testimony could not be considered for the purpose of determining whether Venske actually sent Hunt the video is not decisive, because it is clear from a review of the record that the State's case against Hunt was not predicated on whether Hunt received the video of sexual intercourse from Venske. The strength of the State's case was largely dependent on the specific and consistent testimony of A.H, who was the State's principal witness at trial. Notably, A.H. never testified *600 about the source of the images on Hunt's cell phone, and the State never raised the issue while making its case to the jury. The crux of the State's case was not who sent the video of sexual intercourse to Hunt, but rather, whether Hunt showed the video of sexual intercourse to A.H. Consequently, A.H.'s testimony, and the State's case, focused on A.H.'s detailed description of the circumstances surrounding Hunt showing her inappropriate images on his cell phone, as well as the content of those images. Therefore, the importance of Venske's excluded testimony was its value in corroborating Hunt's testimony that Venske never sent him a video, a purpose that was effectively achieved by the admission of Officer Nachtigal's testimony.
¶ 36. In sum, we conclude that the exclusion of Venske's testimony was harmless error. The jury heard direct testimony from Hunt that Venske did not send him the video of sexual intercourse. This testimony was corroborated by Officer Nachtigal's testimony that Venske had told him in a police interview that he did not send any videos to Hunt, which bolstered Hunt's version of the facts and was favorable to the defense. Further, the record shows that the State's case did not hinge on establishing the source of the inappropriate images on Hunt's cell phone. The strength of the State's case rested largely on A.H.'s testimony, and the State never raised the issue at trial of where the images on Hunt's phone originated from in proving the essential elements of the crime for which Hunt was convicted. For these reasons, we conclude that it is clear "beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained." Harris, 307 Wis. 2d 555, ¶ 42 (quoting Chapman, 386 U.S. at 24).
*601 B. Hunt's Ineffective Assistance Argument
¶ 37. Hunt's second argument on appeal is that his trial counsel rendered constitutionally ineffective assistance. To support his claim, Hunt points to three separate incidents at trial that he contends amount to ineffective assistance. First, Hunt asserts trial counsel was ineffective for failing to argue an applicable hearsay exception that would permit A.H. to testify that Venske sent the images to Hunt's cell phone. Second, Hunt maintains trial counsel did not effectively argue to prevent testimony regarding the two images described by A.H. that the circuit court determined did not constitute "sexually explicit conduct" as a matter of law. See Wis. Stat. § 948.055(1). Finally, Hunt argues trial counsel was ineffective for failing to accept the circuit court's invitation to include additional clarifying language in the jury instructions. Because Hunt's ineffective assistance claims implicate distinct facts from his evidentiary argument discussed above, we address each individually below. We conclude that, regarding Hunt's first two ineffectiveness claims, Hunt's defense was not prejudiced by the performance of trial counsel. On Hunt's third ineffectiveness claim, we conclude Hunt's counsel was not deficient.
i. Applicable Legal Principles
¶ 38. Criminal defendants are guaranteed a right to effective assistance of counsel under the Sixth and Fourteenth Amendments to the United States Constitution. Strickland, 466 U.S. at 685-86; State v. Balliette, 2011 WI 79, ¶ 21, 336 Wis. 2d 358, 805 N.W.2d 334. In Strickland, a seminal decision on ineffective assistance of counsel claims, the United *602 States Supreme Court set forth a two-part test for establishing that counsel's performance was ineffective: (1) counsel's performance was deficient; and (2) the defendant was prejudiced as a result. 466 U.S. at 687. "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." Id. at 686. In addition, "a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies." Id. at 697; see also State v. Johnson, 153 Wis. 2d 121, 128, 449 N.W.2d 845 (1990).
¶ 39. Regarding the first prong of the Strickland test, the Supreme Court explained counsel's performance is deficient when "in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." Id. at 690. "[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." Id. In assessing counsel's performance, a court must make "every effort... to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." Id. at 689.
¶ 40. Under the second prong of the Strickland test, deficient performance by counsel is prejudicial only if the "errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Id. at 687. A defendant must demonstrate "a *603 reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694.
ii. Hunt's First Ineffective Assistance Claim
¶ 41. Hunt first asserts his trial counsel was ineffective for failing to argue that certain testimony by A.H. was admissible under the present sense impression exception to the hearsay rule.[9] During the trial, Hunt's counsel asked A.H. the following question: "When your father showed you the pictures on his phone, he said something like, hey, do you want to see the kind of stuff that Matt sends me?" The State objected on hearsay grounds, and Hunt's counsel argued the testimony was within the scope of cross-examination and admissible under the exception to the hearsay rule for statements against interest.[10] The *604 circuit court sustained the State's objection, noting that Hunt's counsel sought to "introduce a statement of your own client against your own client's interests." On appeal, Hunt argues counsel performed deficiently by failing to argue the evidence was admissible as a present sense impression, and his defense was prejudiced as a result.
¶ 42. The State concedes the present sense impression exception applied to A.H.'s testimony.[11] However, the State argues that "cho[osing] the wrong exception" to the hearsay rule does not rise to the level of deficient performance. The State also asserts that any deficiency by counsel did not prejudice Hunt for purposes of an ineffective assistance claim.
¶ 43. We conclude Hunt was not prejudiced by trial counsel's failure to cite an applicable hearsay exception. The State's case against Hunt was not predicated on whether he received the video from Venske. Hunt was charged with causing a child to view or listen to sexual activity in violation of Wis. Stat. § 948.055(1). The source of the sexually explicit image is not an essential element of the statute. Had the *605 State brought charges against Venske, the issue of whether Venske sent the video would be unquestionably central to his defense. As it stands, however, the relevant question for the jury to consider was whether Hunt showed A.H. the video, not from whom it was received.
¶ 44. Therefore, any testimony relating to whether Venske sent the video to Hunt could relate only to the credibility of each party's respective version of events. The testimony that was admitted at trial conveyed two stories: Hunt testifying that Venske did not send him a video, and Officer Nachtigal testifying that A.H. told him in her police interview that the video came from Venske.[12] Officer Nachtigal's testimony functionally conveyed the same information as A.H.'s excluded testimony. Although A.H.'s version of events might have been stronger if she had been allowed to corroborate Officer Nachtigal's testimony, such an outcome would certainly not be helpful to Hunt. If Hunt's counsel had successfully argued for admission of A.H.'s testimony, the jury would have heard her provide only more detailed information about where Hunt obtained the video. Such additional evidence would have been utterly inconsistent with Hunt's own testimony, and far from strengthening his case, might instead have undercut his own credibility. Counsel cannot be ineffective for failing to successfully introduce testimony that might very well have been damaging to Hunt and that was functionally conveyed *606 from another source. We therefore conclude that Hunt's counsel was not ineffective for failing to argue for admission of A.H.'s testimony as a present sense impression.
iii. Hunt's Second Ineffective Assistance Claim
¶ 45. Hunt's second ineffective assistance argument is that trial counsel failed to provide the circuit court with the strongest argument for excluding evidence regarding the cell phone image of a topless woman posing with a deer head and the alleged image of a woman bending over. Hunt's counsel filed a pretrial motion in limine arguing for exclusion of this evidence, but did not mention the motion during the pretrial motion hearing. During the trial, Hunt's counsel objected to A.H.'s testimony describing these two images on the basis that they were extrinsic and irrelevant.
¶ 46. Hunt contends his trial counsel performed deficiently in failing to invoke Wis. Stat. § 904.03, which provides for exclusion of evidence "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury . . . ." Specifically, Hunt argues that Wis. Stat. § 904.03 was applicable because the evidence in question posed a high likelihood of confusing or misleading the jury. According to Hunt, because the other two images described by A.H. also featured offensive sexual conduct, the jury could easily be confused about which image could support a conviction. As a result, there was a high risk that Hunt would be convicted based on images which the circuit court had already ruled were not "sexually explicit conduct" as a matter of law. See Wis. Stat. § 948.055(1). Hunt also points out *607 that the probative value of the evidence was minimal because it was admitted for the purpose of providing context to A.H.'s testimony.
¶ 47. The State argues that, even assuming Hunt's counsel performed deficiently in failing to invoke Wis. Stat. § 904.03, the deficiency did not prejudice his defense.
¶ 48. We agree with the State.[13] Hunt's argument is premised on the possibility that the jury could have convicted him based on images that did not meet the statutory criteria in Wis. Stat. § 948.055(1). However, the circuit court's instruction to the jury specified that the only unlawful image was the video of sexual intercourse:
The second count of the information charges that between September 1st, 2009, and June 30th, 2010, in the City of Fort Atkinson, Jefferson County, Wisconsin, the defendant did commit the crime of causing a child to view or listen to sexual activity, specifically, a video clip of a man and woman engaging in sexual intercourse.
(Emphasis added). For Hunt's argument to succeed, we would have to assume that the jury failed to adhere to the circuit court's instruction. However, as Hunt points out in his brief, "|j]urors are presumed to have followed jury instructions." State v. LaCount, 2008 WI 59, ¶ 23, 310 Wis. 2d 85, 750 N.W.2d 780.
*608 ¶ 49. In addition, during the supplemental post-conviction motion hearing, the circuit court explained that even if Hunt's counsel had raised the confusion argument at trial, the outcome would have been no different:
I don't think that the confusion argument is particularly compelling.
.... Even if it were made, I would not have granted the objection on that basis because the danger of confusion is really relatively low here. Especially given the fact that I instructed the jury that the image of the two people allegedly engaging in a sex act is the image that constitutes the basis for that criminal charge.
.... The other two images, as they have been referred to today and elsewhere on the record, were highly probative for the reasons I have previously indicated.
That highly probative value substantially outweighs whatever danger of confusion might have been present and I find that any risk of confusion was relatively low.
¶ 50. In arguing that evidence of the two images described by A.H. posed a significant risk of confusing the jury, Hunt overlooks that he also introduced evidence of an additional offensive image at trial — that is, the picture of a testicular hernia. If there was a risk of confusion to the jury, it was created equally by both sides. Hunt cannot convincingly argue that his own evidence posed "no real danger" of confusion, but that comparable evidence introduced by the prosecution should have been excluded.
¶ 51. For these reasons, we conclude that Hunt failed to meet his "burden of showing that the decision reached would reasonably likely have been different absent the errors" under his second ineffective assistance of counsel claim. Strickland, 466 U.S. at 696.
*609 iv. Hunt's Third Ineffective Assistance Claim
[27]
¶ 52. Hunt's final ineffective assistance claim is that trial counsel was deficient for failing to ensure the jury instructions clearly distinguished between the images that were discussed at trial. During the jury instruction conference, the circuit court suggested adding clarifying language to the jury instruction describing the elements of causing a child to view or listen to sexual activity. The proposed instruction would have specified that the contested image in this case was the video of sexual intercourse, not the other images described by A.H. If accepted, the circuit court would have delivered the following instruction to the jury:
Element Number 1, the defendant caused [A.H.] to view or listen to sexually explicit conduct. Sexually explicit conduct means actual or simulated sexual intercourse, masturbation, lewd exhibition of an intimate part.

In this case, the State alleges that the video clip of a man and woman engaging in sexual intercourse is sexually explicit conduct.

(Emphasis added). Hunt's trial counsel objected to the additional language, and Hunt now argues his trial counsel lacked a valid strategic reason for the objection. Hunt maintains that, due to the nature of the images described by A.H., there was a heightened risk the jury would convict him based on an image that did not meet the statutory criteria for "sexually explicit conduct" under Wis. Stat. § 948.055(1).
¶ 53. The State asserts that counsel's decision to object to the instruction was a legitimate strategic decision, and as such, it cannot form the basis for an ineffective assistance claim.
*610 ¶ 54. We agree with the State that counsel's performance was not deficient. During the jury instruction conference, Hunt's counsel provided the following rationale in support of his objection to the proposed instruction:
I think [the instruction] amplifies it and gives some validity of the State's argument when we tell [the jury] an element of this is what the State is alleging. It's like me adding that what the defense is alleging is a defense as well.
Hunt's counsel also referred to the circuit court's previous amended jury instruction, which already clarified that the video of sexual intercourse was the basis for the State's charge. In response to Hunt's objection, the circuit court explained, "Okay, I don't mind if we take that one out. ... I want the jury to be on notice of what image we are talking about, and I think we have covered that in [the previous instruction]. . . . I'm agreeing with you."
¶ 55. Hunt's counsel weighed the possibility of juror confusion against the likelihood that the proposed instruction would appear to legitimize the State's allegations, and he made a reasonable strategic choice to object to the instruction. Hunt's counsel concluded that the circuit court's other amended jury instruction would rectify any possible confusion about which image formed the basis for the State's complaint. We find no reason for concluding that counsel's strategic decision "fell below an objective standard of reasonableness." Strickland, 466 U.S. at 688. To the contrary, the circuit court later expressed agreement *611 with the reasoning of Hunt's counsel.[14] "A strategic trial decision rationally based on the facts and the law will not support a claim of ineffective assistance of counsel." State v. Elm, 201 Wis. 2d 452, 464-65, 549 N.W.2d 471 (Ct. App. 1996). We will not "second-guess [] the trial counsel's considered selection of trial tactics or the exercise of a professional judgment in the face of alternatives that have been weighed by trial counsel." State v. Felton, 110 Wis. 2d 485, 502, 329 N.W.2d 161 (1983). Therefore, we conclude that counsel's decision to object to the circuit court's second amended jury instruction was not deficient performance for purposes of an ineffective assistance of counsel claim.[15]
*612 IV. CONCLUSION
¶ 56. Because Venske's testimony was relevant to Hunt's theory of defense and corroborated his version of events, we hold that the circuit court erred in excluding the testimony. However, we conclude that the State met its burden of proving that it is "clear beyond a reasonable doubt that a rational jury would have found the defendant guilty absent the error," Harvey, 254 Wis. 2d 442, ¶ 49 (quotingNeder, 527 U.S. at 18), and thus, the error was harmless. We further determine that Hunt's ineffective assistance of counsel claims fail under the two-part inquiry of Strickland, 466 U.S. at 687 (1984). We conclude that, under the totality of the circumstances, Hunt received a fair trial, and our confidence in the judgment is not undermined. Accordingly, we reverse the decision of the court of appeals and reinstate the circuit court's judgment of conviction and affirm its denial of Hunt's post-conviction motion.
By the Court. — The decision of the court of appeals is reversed.

 State v. Hunt, No. 2012AP2185-CR, unpublished slip op. (Wis. Ct. App. July 18, 2013).

 Judge Randy R. Koschnick presided.

 All subsequent references to the Wisconsin Statutes are to the 2009 — 10 version unless otherwise indicated.

 Officer Nachtigal's police report, which recounted his initial interview with A.H. on October 11, 2010, was admitted into evidence as Def. Ex. No. 2.

 "Sexually explicit conduct" is defined as actual or simulated:
(a) Sexual intercourse, meaning vulvar penetration as well as cunnilingus, fellatio or anal intercourse between persons or any other intrusion, however slight, of any part of a person's body or of any object into the genital or anal opening either by a person or upon the person's instruction. The emission of semen is not required;
(b) Bestiality;
(c) Masturbation;
(d) Sexual sadism or sexual masochistic abuse including, but not limited to, flagellation, torture or bondage; or
*586 (e) Lewd exhibition of intimate parts.
Wis. Stat. § 948.01(7).

 Wis. Stat. § 906.08(2) provides:
Specific instances of the conduct of a witness, for the purpose of attacking or supporting the witness's credibility . .. may not be proved by extrinsic evidence. They may, however, subject to s. 972.11(2), if probative of truthfulness or untruthfulness and not remote in time, be inquired into on cross-examination of the witness or on cross-examination of a witness who testifies to his or her character for truthfulness or untruthfulness.

 None of the images at issue in this case were recovered from Hunt's cell phone or otherwise admitted into evidence at trial. While Hunt acknowledges that the image of the naked woman posing with a deer head and image of the testicular hernia were, at one time, in his cell phone, he denies that he ever possessed the other images that A.H. alleges he showed her. Because the circuit court determined the image described by A.H. of the cartoon depiction of a woman bending over did not meet the statutory criteria for "sexually explicit conduct," and was never offered into evidence, the image's existence was not established at trial and remains disputed by the parties.

 Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Wis. Stat. § 904.01. Evidence is deemed to be relevant if it bears "upon any one of [the] countless .. . factors which are of consequence to the determination of the action." Holmes v. State, 76 Wis. 2d 259, 268, 251 N.W.2d 56 (1977).

 Hearsay evidence is generally inadmissible at trial. Wis. Stat. § 908.02. However, Wis. Stat. § 908.03(1) provides for the admission of hearsay evidence that describes a present sense impression, defined as "[a] statement describing or explaining an event or condition made while the declarant was perceiving the event or condition, or immediately thereafter."

 Wisconsin Stat. § 908.045(4) provides that a statement against interest is admissible as an exception to the general rule against hearsay evidence. A statement against interest is defined as "[a] statement which was at the time of its making so far contrary to the declarant's pecuniary or proprietary interest, or so far tended to subject the declarant to civil or criminal liability.. . that a reasonable person in the declarant's position would not have made the statement unless the person believed it to be true." Id. However, this provision only applies if the declarant is unavailable to testify. Wis. Stat. *604 § 908.045. The exception would not apply in this case because the declarant, Hunt, testified on his own behalf shortly after A.H.

 We note that, while the State has conceded the present sense impression exception applied to A.H.'s testimony, the question of whether a statement is admissible under a hearsay exception is a question of law. Horak v. Bldg. Servs. Indus. Sales Co., 2012 WI App 54, ¶ 11, 341 Wis. 2d 403, 815 N.W.2d 400. Because it is our constitutional duty to say what the law is, we are not bound by a party's concessions of law. Lloyd Frank Logging v. Healy, 2007 WI App 249, ¶ 15 n.5, 306 Wis. 2d 385, 742 N.W.2d 337. However, for the sake of argument, we assume, without deciding, that A.H.'s testimony was admissible under the present sense impression exception to the hearsay rule.

 Officer Nachtigal's testimony was further collaborated by the police report recounting his interview with A.H. The police report — which was admitted into evidence at trial— explained A.H. told Officer Nachtigal that when Hunt showed her the video, he remarked, "this is the kind of stuff that [Hunt's] friend [Venske] sends him."

 As we have previously observed, because the defendant must prove both deficient performance and prejudice under Strickland's two-part test in order to establish ineffective assistance of counsel, courts "may reverse the order of the two [Strickland] tests or avoid the deficient performance analysis altogether if the defendant has failed to show prejudice!.]" State v. Johnson, 153 Wis. 2d 121, 128, 449 N.W.2d 845 (1990).

 In Hunt's postconviction motion hearing, the circuit court explained:
[Hunt's trial counsel's] stated strategy was that he did not want that to be in the instruction because it might convey to the jury that the Court believed that the video image in question was, in fact, sexually explicit conduct.
That's a legitimate strategy decision. . .. [I]n hindsight, I think [Hunt's trial counsel] was right about that. It probably would have been detrimental to the defense to have that explanation in [the jury instruction], because it could have placed that quality on the assertion in the instruction that this has been endorsed by the Court as constituting sexually explicit conduct.

 Hunt also argues that his trial counsel's alleged deficiencies, taken in the aggregate, had a significant, prejudicial impact on his defense. It is true that we consider the cumulative effect of counsel's deficiencies when assessing whether the prejudice standard in Strickland has been satisfied. State v. Thiel, 2003 WI 111, ¶ 59, 264 Wis. 2d 571, 665 N.W.2d 305. As this court has previously explained, "tflust as a single mistake in an attorney's otherwise commendable representation may be so serious as to impugn the integrity of a proceeding, the cumulative effect of several deficient acts or omissions may, in certain instances, also undermine a reviewing court's confi *612 dence in the outcome of a proceeding." Id., ¶ 60. This approach is inapplicable, however, in situations — such as this case— where the reviewing court concludes that the alleged errors, taken in isolation, did not constitute a deficient act or omission. "[Ejach alleged error must be deficient in law — that is, each act or omission must fall below an objective standard of reasonableness — in order to be included in the calculus for prejudice." Id., ¶ 61. Because we conclude that one of the alleged errors raised by Hunt are not deficient as a matter of law, we cannot address Hunt's aggregacy argument, as we do not find any, let alone multiple, instances of deficient performance.