COURT OF APPEALS
DECISION
DATED AND FILED

May 13, 2021

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No.     **2020AP1218-CR**

Cir. Ct. No.  **2019CT17**

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT IV

---

STATE OF WISCONSIN,

    PLAINTIFF-RESPONDENT,

V.

JOHN R. ANKER,

    DEFENDANT-APPELLANT.

---

APPEAL from a judgment of the circuit court for Columbia County: TODD J. HEPLER, Judge. *Affirmed*.

¶1     KLOPPENBURG, J.[1] John Anker appeals his conviction of operating a motor vehicle while intoxicated (OWI) as a third offense. Anker

---

[1] This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2)(f) (2019-20). All references to the Wisconsin Statutes are to the 2019-20 version unless otherwise noted.

argues that the circuit court erroneously denied his pretrial motion to suppress field sobriety testing and blood analysis evidence obtained after the investigating officer extended Anker's routine traffic stop to administer the field sobriety tests, asserting that the extension of the stop was not supported by reasonable suspicion as required by the Fourth Amendment. Anker also argues that the circuit court erroneously denied his motion to preclude reference at trial to his refusal to submit to a warrantless blood draw, in violation of his Fourth Amendment right to be free from unreasonable searches and seizures. In the alternative, Anker argues that the circuit court erroneously denied his motion to exclude evidence at trial of his refusal without having first conducted a refusal hearing.

¶2     I conclude that the officer's extension of the traffic stop to administer field sobriety tests was supported by reasonable suspicion and that the circuit court properly denied Anker's motion to suppress the field sobriety testing and blood analysis evidence obtained after the extension. I also conclude that Anker's constitutional challenge to the denial of his motion to preclude reference at trial to Anker's refusal is itself precluded by this court's decision in *State v. Levanduski*, 2020 WI App 53, 393 Wis. 2d 674, 948 N.W.2d 411. Finally, because the State explains that it is clear beyond a reasonable doubt that a rational jury would have found Anker guilty absent any error in admitting evidence at trial of Anker's refusal without having first conducted a refusal hearing based on the "comprehensive evidence" of Anker's guilt and Anker fails to contest the issue on reply, I deem Anker to have conceded that any such error by the circuit court was harmless. Accordingly, I affirm.

## BACKGROUND

¶3     The following facts are undisputed. The facts relating to the stop are taken from the evidentiary hearing on Anker's motion to suppress.

¶4     On November 10, 2018, Poynette Police Officer Scott Anderson observed Anker driving his vehicle, which was missing its front license plate. Anderson conducted a traffic stop to investigate the license plate violation. Prior to stopping the vehicle, Anderson did not notice any "erratic driving" or speeding. Anderson approached the vehicle and informed Anker of the license plate violation. Immediately upon making contact with Anker, Anderson "noted that there was a strong odor of intoxicants emitting from the vehicle, that [Anker's] eyes were glossy[2] and bloodshot, and that his speech was slow and slurred." Based on Anderson's training and experience, Anderson knew that these were possible indications of intoxication. Anderson asked Anker whether he had been drinking and Anker reported that he had consumed one beer thirty minutes prior. Anderson conducted a Department of Transportation records check to determine whether Anker's license plate was valid and discovered that Anker had two previous OWI convictions.

¶5     Anderson then returned to Anker to conduct an OWI investigation. Anderson asked Anker to step out of his car and administered three field sobriety tests; Anker's performance on each of the three tests was consistent with that of an intoxicated person.

---

[2] Officer Anderson used "glossy" and "glassy" interchangeably in his testimony.

¶6 Anderson placed Anker under arrest and read him the "Informing the Accused" form as detailed in WIS. STAT. § 343.305(4). Anderson asked Anker, "Will you submit to an evidentiary chemical test of your blood?" and Anker responded that he would like to speak with an attorney. Anderson asked Anker again if he consented to the blood draw and Anker again asked for an attorney. Based on Anker's requests for an attorney, Anderson did not believe he had Anker's consent for the blood draw and therefore obtained a warrant. The test results from the blood draw showed that Anker's blood alcohol content was, at 0.114, over the legal limit.

¶7 Anker was subsequently charged with operating a motor vehicle while under the influence of an intoxicant and of operating with a prohibited alcohol concentration, both as a third offense. Anker moved to suppress evidence of the field sobriety testing and blood analysis. The circuit court held an evidentiary hearing and denied the motion. Anker subsequently filed a motion in limine to "preclude reference" by the State at trial of his refusal, and the court denied the motion. At trial, the court instructed the jury that it should consider evidence of the refusal "along with all the other evidence in the case, giving to it the weight you believe it is entitled to receive."

¶8 The jury found Anker guilty as charged, and the circuit court subsequently entered a judgment of conviction. Anker appeals.

## DISCUSSION

¶9 Anker argues that the circuit court erroneously denied his pretrial motion to suppress evidence of the field sobriety testing and blood analysis, and that the circuit court erroneously denied his motion in limine to preclude reference at trial to his refusal to consent to the blood draw in violation of his constitutional

4

rights and without having first conducted a refusal hearing. I address each argument in turn.

## I. Denial of motion to suppress evidence of field sobriety testing and blood alcohol analysis.

¶10 "'Whether evidence should be suppressed is a question of constitutional fact.'" *State v. Knapp*, 2005 WI 127, ¶19, 285 Wis. 2d 86, 700 N.W.2d 899 (quoting *State v. Samuel*, 2002 WI 34, ¶15, 252 Wis.2d 26, 643 N.W.2d 423). When this court reviews a circuit court's ruling on a motion to suppress evidence, we apply the clearly erroneous standard to the circuit court's findings of fact and we review de novo the court's application of constitutional principles to the findings of fact. *State v. Floyd*, 2017 WI 78, ¶11, 377 Wis. 2d 394, 898 N.W.2d. 560. "A finding of fact is clearly erroneous if it is against the great weight and clear preponderance of the evidence." *State v. Anderson*, 2019 WI 97, ¶20, 389 Wis. 2d 106, 935 N.W.2d 285.

¶11 Temporary detention during a traffic stop is a seizure and, therefore, it must conform to the constitutional requirement of reasonableness. *State v. Popke*, 2009 WI 37, ¶11, 317 Wis. 2d 118, 765 N.W.2d 569. A law enforcement "officer may stop a vehicle when he or she reasonably believes the driver is violating[, or has violated,] a traffic law." *State v. Hogan*, 2015 WI 76, ¶34, 364 Wis. 2d 167, 868 N.W.2d 124. The officer may lawfully extend a valid traffic stop if the officer "'becomes aware of additional suspicious factors which are sufficient to give rise to an articulable suspicion that the person has committed or is committing an offense or offenses separate'" from the violation that prompted the officer's initial investigation. *State v. Colstad*, 2003 WI App 25, ¶19, 260 Wis. 2d 406, 659 N.W.2d 394 (quoted source omitted). An extension of a valid stop must be supported by reasonable suspicion. *Hogan*, 364 Wis. 2d 167, ¶35;

*Colstad*, 260 Wis. 2d 406, ¶19 (an extension of a valid stop must be supported by articulable facts that would cause a reasonable officer to be suspicious that the person "has committed or is committing" an offense separate from the traffic offense that occasioned the stop.).

¶12     Thus, here, in order to administer field sobriety tests the officer must have obtained additional information during or after the initial traffic stop that supported reasonable suspicion that Anker was operating the vehicle while under the influence of alcohol.  *See Hogan*, 364 Wis. 2d 167, ¶¶11, 34-35, 53 (where officer initially stopped vehicle because driver was violating seat belt law, extension of stop to administer field sobriety testing was unlawful where unsupported by reasonable suspicion).  "There is no question that a police officer may stop a vehicle when he or she reasonably believes the driver is violating a traffic law….  An expansion in the scope of the inquiry, when accompanied by an extension of time longer than would have been needed for the original stop, must be supported by reasonable suspicion."  *Id.*, ¶¶34-35 (internal quotation marks and quoted source omitted).

¶13     "A determination of reasonable suspicion is made based on the totality of the circumstances."  *State v. Anderson*, 2019 WI 97, ¶33, 389 Wis. 2d 106, 935 N.W.2d 285.  The officer "'must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant' the intrusion of the stop."  *State v. Post*, 2007 WI 60, ¶10, 301 Wis. 2d 1, 733 N.W.2d 634 (quoted source omitted).  Under the totality of the circumstances test, "[t]he building blocks of fact accumulate.  And as they accumulate, reasonable inferences about the cumulative effect can be drawn."  *State v. Waldner*, 206 Wis. 2d 51, 58, 556 N.W.2d 681 (1996).

¶14    The parties agree that Anker's missing license plate violated a traffic law, rendering the initial stop valid.  *See Hogan*, 364 Wis. 2d 167, ¶34 ("There is no question that a police officer may stop a vehicle when he or she reasonably believes the driver is violating a traffic law....").  The question on appeal is whether the extension of the stop to administer field sobriety tests was supported by reasonable suspicion.  *Id.*, ¶35.  I conclude that it was, for the reasons I now explain.

¶15    The record shows that the extension of Anker's stop was justified by specific, articulable facts that would cause a reasonable officer, in light of his or her experience and training, to suspect that Anker may have been operating while intoxicated.  Those facts include:  Anker's admission of recent alcohol consumption, Anker's "glossy and bloodshot eyes," the "strong odor of intoxicants" coming from Anker's vehicle, Anker's "slow and slurred" speech, Anker's two previous OWI offenses, and the investigating officer's own training and experience.  Although any one of these facts on its own might be insufficient to support reasonable suspicion, taken together they are indicia of possible intoxicated driving.  *See State v. Tullberg*, 2014 WI 134, ¶35, 359 Wis. 2d 421, 857 N.W.2d 120 (bloodshot and glassy eyes one indicator of intoxication); *State v. Kennedy*, 2014 WI 132, ¶22, 359 Wis. 2d 454, 856 N.W.2d 834 (bloodshot eyes, odor of intoxicants, slurred speech indicators of intoxication); *State v. Lange*, 2009 WI 49, ¶¶33, 37, 317 Wis. 2d 383, 766 N.W. 2d 551 (possible indicators of intoxication include prior convictions for OWI, odors of intoxicants, admission of consumption).  Here, "[t]he building blocks of fact accumulate" such that the totality of the circumstances justified Anderson's extension of the traffic stop for the purpose of initiating an OWI investigation by administering field sobriety

testing. *Waldner*, 206 Wis. 2d at 58. I now address Anker's arguments to the contrary and explain why I reject them.

¶16 Anker argues that the officer had insufficient information to conclude that Anker operated the vehicle while intoxicated because there were "no signature hallmarks of an impaired person: no swerving, no difficulty understanding the officer, no dexterity issues noted." Anker relies on the unpublished, authored opinion in *County of Sauk v. Leon*, 2011 WI App 1, ¶20, 330 Wis. 2d 836, 794 N.W.2d 929,[3] for the premise that because Anker did not exhibit bad driving, there are no facts from which the inference that Anker was intoxicated may reasonably be drawn. I reject this argument for the following reasons.

¶17 First, our case law establishes that "a driver's actions need not be erratic, unsafe, or illegal to give rise to reasonable suspicion" of driving while intoxicated. *Post*, 301 Wis. 2d 1, ¶24. There is no "bright-line rule" for the facts necessary to give rise to reasonable suspicion because the legal standard for reasonable suspicion is a common sense, totality of the circumstances test. *Id.*, ¶26. Second, *Leon* is not persuasive here because the defendant in that case did not exhibit slurred speech or bloodshot eyes, the odor of alcohol was of unspecified intensity, and the officer was not aware of any prior OWI convictions. *Leon*, 330 Wis. 2d 836, ¶¶26-28. Here, the additional indicia of intoxication, including a "strong" odor of alcohol, slurred speech, glossy and bloodshot eyes, and prior OWI convictions, accumulate to create reasonable suspicion of impaired

---

[3] Unpublished, authored opinions issued after July 1, 2009 may be cited for persuasive value only. WIS. STAT. § 809.23(3)(b).

driving. As stated above, it may be true here, as in *Waldner*, that "[a]ny one of these facts, standing alone, might well be insufficient. But that is not the test we apply. We look to the totality of the facts taken together." *Waldner*, 206 Wis. 2d at 58. To the extent that Anker intends to argue that reasonable suspicion requires that the officer identify Anker's asserted "signature hallmarks of an impaired person," that argument fails as counter to the well-established totality of the circumstances test. *See Post*, 301 Wis. 2d 1, ¶13 ("The reasonableness of a stop is determined based on the totality of the facts and circumstances.").

¶18    Anker next argues that the circuit court erred "because it relied upon factors not testified to," pointing out that the officer did not testify as to whether he believed Anker was dishonest about his alcohol consumption, whether or how the strong odor of alcohol was significant to the officer's decision to detain Anker for field sobriety testing, or how bloodshot eyes are relevant to impaired driving. This argument misses the mark in several respects. As to whether the officer believed Anker was being dishonest, reasonable suspicion is an "objective" and "common sense" test, *Waldner*, 206 Wis. 2d at 56, and the officer was not required to detail his subjective state of mind. *State v. Baudhuin*, 141 Wis. 2d 642, 651, 416 N.W.2d 60 (1987) ("'[T]he fact that the officer does not have the state of mind which is hypothecated by the reasons which provide the legal justification for the officer's action does not invalidate the action taken as long as the circumstances, viewed objectively, justify that action….'") (quoting *Scott v. United States*, 436 U.S. 128, 138 (1978)). *Cf. State v. Rose*, 2018 WI App 5, ¶28, 379 Wis. 2d 664, 907 N.W.2d 463 (As long as there is an objectively lawful basis to continue detention, an individual is lawfully detained.). Nor does Anker cite any law requiring that the officer explain the significance of the strong odor of

9

alcohol or bloodshot eyes; rather the law cited above confirms that these are recognized indicia of intoxication.

¶19     Anker also takes issue with the circuit court's observation that there was a "contradiction between Mr. Anker's suggestion that he had one beer a half-hour prior" and the officer's observations of Anker's appearance and smell because the officer did not testify as to that contradiction.  However, the court's observation that there was a contradiction between Anker's suggestion that he had only one beer and Anker's slurred speech, bloodshot and glossy eyes, and strong odor of alcohol reflects the circuit court's application of the objective, common sense test for reasonable suspicion.

¶20     For these reasons, I conclude that the extension of the stop to administer field sobriety tests was supported by reasonable suspicion.  Anker does not dispute that the validly obtained evidence of Anker's failed field sobriety tests supported probable cause for the warrant that the officer obtained to authorize a blood draw for the purpose of chemical analysis.  Accordingly, the circuit court properly denied Anker's suppression motions regarding this evidence.

## II.  Evidence of refusal to submit to warrantless blood draw.

¶21     Anker argues that the circuit court erroneously admitted at trial reference to and evidence of his refusal to submit to a warrantless blood draw.

¶22     Anker argues that the use of his refusal in the criminal case against him impermissibly burdened his Fourth Amendment right to be free from unreasonable searches and seizures.  This argument is precluded by this court's opinion in *Levanduski*, 393 Wis. 2d 674, ¶¶9-15 (using a person's refusal to consent to a warrantless blood draw against the person in court, including in a

criminal case, is not an inherent constitutional violation). *See Cook v. Cook*, 208 Wis. 2d 166, 189, 560 N.W.2d 246 (1997) ("[P]ublished opinions of the court of appeals are precedential."). Anker essentially argues that *Levanduski* was wrongly decided, but that argument is properly addressed to our supreme court.[4]

¶23     In the alternative, Anker argues that the circuit court erroneously admitted evidence of his refusal without having first conducted a formal refusal hearing. *See* WIS. STAT. § 343.305(9)(a) (detailing procedures for and issues to be determined at a refusal hearing if requested). The State responds that any error in admitting evidence of Anker's refusal without having first conducted a refusal hearing is harmless given the "comprehensive" evidence of Anker's intoxication. *See State v. Hunt*, 2014 WI 102, ¶26, 360 Wis. 2d 576, 851 N.W.2d 434 (evidentiary errors subject to harmless error analysis, under which "the error is harmless if it is 'clear beyond a reasonable doubt that a rational jury would have found the defendant guilty absent the error.'" (quoted source omitted)).

¶24     Anker does not address this harmless error in his reply brief. Accordingly, I take him to have conceded the issue. *See United Coop. v. Frontier FS Coop.*, 2007 WI App 197, ¶39, 304 Wis. 2d 750, 738 N.W.2d 578 (appellant's failure to respond in reply brief to an argument made in response brief may be taken as a concession).

---

[4] In *State v. Mulholland*, No. 2019AP1066-CR, unpublished op. and order (WI App Sept. 10, 2020) (Kloppenburg, J., concurring), I agreed that this court was "bound to reverse because *Levanduski* controls our analysis," but wrote separately "to state my belief that *Levanduski* is wrongly decided." *See Cook v. Cook*, 208 Wis. 2d 166, 190, 560 N.W.2d 246 (1997) (This court "is not powerless if it concludes that a prior decision of the court of appeals or the supreme court is erroneous. It may … decide the appeal, adhering to a prior case but stating its belief that the prior case was wrongly decided.").

¶25 Moreover, the record shows that it is clear beyond a reasonable doubt that a rational jury would have found Anker guilty of the OWI charge absent evidence of his refusal to submit to a warrantless blood draw. Even if the refusal evidence had been excluded, the jury would have been presented with evidence of Anker's failure of the field sobriety testing, for which the officer had reasonable suspicion, and of Anker's blood alcohol content, for which the officer obtained a warrant, as well as the officer's testimony about Anker's slurred speech, bloodshot and glossy eyes, and strong odor of alcohol. This overwhelming evidence of Anker's guilt means that any error in admitting evidence of Anker's refusal was harmless because a rational jury would have found Anker guilty absent the refusal evidence. *See **Hunt***, 360 Wis. 2d 576, ¶26 (evidentiary "error is harmless if it is 'clear beyond a reasonable doubt that a rational jury would have found the defendant guilty absent the error.'" (quoted source omitted)).

## CONCLUSION

¶26 For the reasons explained, I affirm.

*By the Court.*—Judgment affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)4.