COURT OF APPEALS
DECISION
DATED AND FILED

July 13, 2021

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2020AP583-CR**

Cir. Ct. No. **2017CF1813**

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT I

---

STATE OF WISCONSIN,

PLAINTIFF-RESPONDENT,

V.

NICHOLAS JOHN HANSON,

DEFENDANT-APPELLANT.

---

APPEAL from a judgment of the circuit court for Milwaukee County: DAVID A. HANSHER, Judge. *Affirmed*.

Before Brash, P.J., Donald and White, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1 PER CURIAM. Nicholas John Hanson appeals the judgment of conviction, following a jury trial, of one count of armed robbery with the threat of

force. Hanson contends that the trial court erred in denying his motion to suppress eyewitness identification evidence. Upon review, we affirm.

## BACKGROUND

¶2 On April 13, 2017, the State charged Hanson with one count of armed robbery with the threat of force. According to the criminal complaint, on April 8, 2017, Hanson held a cashier at a Milwaukee liquor store, S.L., at gunpoint and left with beer. The complaint states that Hanson, whom S.L. knew as a regular customer but not by name, came to the store earlier in the day and found a cell phone on the counter. Hanson gave S.L. the phone, telling him that it belonged to a friend. Later in the afternoon, Hanson returned to the store and asked S.L. for the phone back. When S.L. told Hanson that the original owner picked up the phone, Hanson became angry, swore at S.L., and stole beer from the store. Later that night, Hanson returned and asked for the phone again, this time brandishing a gun. The complaint further states that Hanson pointed the gun at S.L., demanded that S.L. come out from behind the counter, threatened to shoot S.L., swore at S.L., and then went to the beer cooler and walked out with multiple packs of beer. S.L. identified Hanson as the robber that night after police showed S.L. a photograph of Hanson. S.L. later identified Hanson again following a photo array.

¶3 Hanson, through counsel, filed a motion to suppress the identification evidence, specifically: (1) S.L.'s identification of Hanson from a single photograph of Hanson that police showed S.L. on the night of the robbery; (2) S.L.'s identification of Hanson from the photo array, which he viewed the following day; and (3) S.L.'s anticipated in-court identification of Hanson. Hanson argued that both the single photograph of Hanson and the photo array were unnecessarily

suggestive, that the photo array was unreliable, and that a subsequent in-court identification would be unreliable.

¶4 At a hearing on the motion, Milwaukee Police Officer Nicholas Gronwall testified that on the night of April 8, 2017, he was dispatched to the liquor store in response to an armed robbery report. When Gronwall arrived, S.L. told him that the store had been robbed.

¶5 Gronwall testified that while he was on the scene, a man from the neighborhood, D.C., approached him and said that Hanson had approached him earlier and said that he was going to return to the store later and "start a problem" with S.L. D.C., who used to work at the store and knew Hanson personally, told Gronwall that he wrote Hanson's name on a post-it behind the counter and told S.L. that if anyone causes problems, it would likely be Hanson.

¶6 Gronwall testified that he hoped to identify the robber as soon as possible because he was armed and on foot, thus likely in the area. Gronwall printed a black and white photograph of Hanson that was on file and showed it to S.L., who then identified Hanson as the person who robbed the liquor store. S.L. did not know Hanson by name, but told Gronwall that Hanson had been in the store on prior occasions and that Hanson frequently stole from the store. Gronwall testified that he showed S.L. the photograph of Hanson because of the need to quickly locate Hanson, who presented a "public safety urgency."

¶7 Gronwall further testified that the next day, he presented S.L. with a photo array consisting of six photographs, including a color version of the photograph of Hanson that S.L. viewed the night before. Two empty folders were placed along with the six folders. Another officer shuffled the folders so that Gronwall did not know which folder contained Hanson's photo, other than verifying

that Hanson's photo was not in the first folder. Gronwall testified that he gave S.L. a form explaining the identification procedure and read the instructions to S.L. S.L. then went through the folders, one at time, circling "Yes" for folder three. Folder three contained Hanson's photo; thus, S.L. identified the person in photo "number 3" as the perpetrator of the robbery.

¶8 The trial court denied Hanson's suppression motion, finding that because S.L. knew the perpetrator, Gronwall appropriately showed S.L. a black and white photo of Hanson to determine if he was the robber. The trial court also determined that the victim's identification was reliable.

¶9 At trial, S.L. identified Hanson as the robber, telling the jury that during the incident Hanson stood approximately five feet away from him. S.L. stated that he had no doubt Hanson was the perpetrator.

¶10 A jury ultimately found Hanson guilty as charged. The trial court sentenced Hanson to a ten-year term of imprisonment. This appeal follows.

## DISCUSSION

¶11 On appeal, Hanson challenges the identification evidence, arguing that Gronwall's method of showing S.L. photographs of Hanson was impermissibly suggestive, rendering the two out-of-court identifications inadmissible.

¶12 In reviewing a trial court's decision on a motion to suppress, we apply a two-step standard of review. *See **State v. Eason***, 2001 WI 98, ¶9, 245 Wis. 2d 206, 629 N.W.2d 625. We first review the trial court's findings of fact, and will uphold them unless they are clearly erroneous. *See **id.*** We then "review the application of constitutional principles to those facts *de novo*." *See **id.***

4

¶13    A defendant's due process rights are violated if identification evidence is admitted that stems from a police procedure that is "impermissibly suggestive." *State v. Benton*, 2001 WI App 81, ¶5, 243 Wis. 2d 54, 625 N.W.2d 923. A police identification procedure is impermissibly suggestive if it "give[s] rise to a very substantial likelihood of irreparable misidentification[.]" *State v. Roberson*, 2019 WI 102, ¶31, 389 Wis. 2d 190, 935 N.W.2d 813 (citations and internal quotation marks omitted).

¶14    Hanson argues that Gronwall's presentation of the single photograph violated both the Wisconsin Department of Justice's "Model Policy and Procedure for Eyewitness Identification," as well as his due process rights because: (1) it suggested to S.L. that Hanson was indeed the perpetrator; (2) the photograph was a mugshot of Hanson, suggesting that he was a criminal and likely to have committed the crime; and (3) it may have swayed S.L. into identifying Hanson following S.L.'s conversation with D.C.

¶15    As to the photo array, Hanson contends that Gronwall again violated the Department of Justice's model policy because the model policy discourages the use of multiple identification procedures in which the suspect is viewed more than once. Both violations, Hanson contends, rendered S.L.'s identifications unreliable. Even assuming for the sake of argument that the photo identification procedures in this case were unduly suggestive, we conclude that any error resulting from the admission of that evidence at trial was harmless.

¶16    If a constitutional error at trial does not affect the substantial rights of the defendant, the error is considered harmless. *See Martindale v. Ripp*, 2001 WI 113, ¶30, 246 Wis. 2d 67, 629 N.W.2d 698. Accordingly, this court "will reverse only where there is a reasonable possibility that the error contributed to the final

result." ***Id.*** Stated differently, an error "is harmless if it is 'clear beyond a reasonable doubt that a rational jury would have found the defendant guilty absent the error.'" ***State v. Hunt***, 2014 WI 102, ¶26, 360 Wis. 2d 576, 851 N.W.2d 434 (citations omitted). The burden of establishing harmless error lies with the beneficiary of the error, which in this case is the State. *See* ***State v. Martin***, 2012 WI 96, ¶45, 343 Wis. 2d 278, 816 N.W.2d 270. Based on our review of the record, we agree with the State that an error, if any, resulting from the admission at trial of the out-of-court identifications was harmless.

¶17 Several factors have been identified by our supreme court for consideration when evaluating whether a particular error is harmless. These factors include,

> the frequency of the error, the importance of the erroneously admitted evidence, the presence or absence of evidence corroborating or contradicting the erroneously admitted evidence, whether the erroneously admitted evidence duplicates untainted evidence, the nature of the defense, the nature of the State's case, and the overall strength of the State's case.

***State v. Mayo***, 2007 WI 78, ¶48, 301 Wis. 2d 642, 734 N.W.2d 115.

¶18 The record establishes that even if S.L. was not shown either the single photo or the photo array, a rational jury still would have convicted Hanson. S.L. told police and testified that he knew Hanson as a regular customer. S.L. testified that while he did not know Hanson by name, he would converse with Hanson when he would come to the store and that Hanson would buy "the same stuff all the time." S.L. testified in detail about his encounter with Hanson and stated that Hanson was at close range.

¶19    D.C. testified that he knew Hanson from his elementary school days and that Hanson would visit the liquor store a few times a month while D.C. was an employee. D.C. testified that on the day of the robbery, Hanson approached him and asked if he would be working at the store that day. Hanson told D.C. that he wanted to get a phone back from S.L. and that he would beat up S.L. D.C. further stated that later that night, he saw yellow police tape around the liquor store and asked police officers what had happened. D.C. then told police about his earlier encounter with Hanson.

¶20    Given that S.L. had an independent means of identifying Hanson, as well as D.C.'s interaction with Hanson, there is no reasonable probability that the jury would have acquitted Hanson based on the strength of the other evidence against him.

¶21    Hanson does not challenge S.L.'s in-court identification on appeal, thus, we agree with the State that this argument is forfeited. *See State v. Pettit*, 171 Wis. 2d 627, 646-47, 492 N.W.2d 633 (Ct. App. 1992) (this court may decline to review inadequately briefed issues). Nonetheless, we conclude that S.L.'s in-court identification was admissible.

¶22    "The admissibility of an in-court identification depends upon whether that identification evidence has been tainted by illegal activity." *State v. Roberson*, 2006 WI 80, ¶32, 292 Wis. 2d 280, 717 N.W.2d 111. That is, an admissible in-court identification must rest on the witness's independent recollection of encounters with the suspect, untainted by any illegality. *See id.*, ¶34.

¶23    Here, as discussed, S.L. testified that he had multiple encounters with Hanson prior to the robbery, that Hanson gave him the phone at issue on the day of the robbery, that Hanson was upset when he returned to the store and wanted the

phone back, that Hanson stood about five feet away from him while pointing a gun, and that he had "no doubt" Hanson was the robber. Given S.L.'s independent recollection of his encounters with Hanson, we conclude that S.L.'s in-court identification was admissible.

¶24 For the foregoing reasons, we affirm the trial court.

*By the Court.*—Judgment affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.